Argued and submitted September 28, reversed and remanded December 14, 1994, petition for review denied April 4, 1995 (320 Or 749)

Andy ANDERSON,
*Appellant,*

*v.*

EVERGREEN INTERNATIONAL
AIRLINES, INC.,
*Respondent.*

(9211-08016; CA A82288)

886 P2d 1068

Kevin Keaney argued the cause for appellant. On the briefs were Charles J. Merten and Merten & Associates.

Lori Irish Bauman argued the cause for respondent. With her on the brief were Daniel H. Skerritt and Ater Wynne Hewitt Dodson & Skerritt.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals from the trial court's judgment dismissing his wrongful discharge action. We reverse.

■ Plaintiff's complaint alleges the following material facts.[1] Defendant is an Oregon corporation, which does business, including performing air transport services, throughout the world. Defendant's operations are subject to regulation by the United States Federal Aviation Administration (FAA).[2] In 1989 and 1990, plaintiff worked as an aircraft maintenance engineer for defendant in Sidney, Australia. Throughout his employment, plaintiff's supervisors "regularly and knowingly" ordered him to install defective parts in defendant's 747 aircraft, which were used to transport cargo, rendering those aircraft unairworthy.

In early December 1990, plaintiff, acting in compliance with FAA regulations, replaced a defective part in one of defendant's 747s with a non-defective part. Immediately thereafter, "and from Oregon," defendant:

> "[K]nowingly gave plaintiff a direct order to take the replacement part out of the 747, put the defective part back in the 747, and send the 747 back into flight without logging the removal of the replacement part. Defendant had actual knowledge at [that] time that the part was defective and that had plaintiff obeyed, plaintiff and defendant would have been in violation of FAA regulations. Further, defendant from Oregon concurrently ordered plaintiff to no longer, in the future, replace defective parts and to, in further violation of FAA regulations, falsely certify that he had inspected and made all repairs and replacement of such parts necessary to make the aircraft airworthy."

When plaintiff refused to comply with those orders, and particularly refused to acquiesce in violations of FAA regulations, "defendant, while in Oregon,"[3] fired him.

---

[1] In reviewing the trial court's judgment of dismissal pursuant to ORCP 21, "we consider as true the facts alleged [in plaintiff's pleadings] and all reasonable inferences that may be drawn therefrom." *Glubka v. Long*, 115 Or App 236, 238, 837 P2d 553 (1992).

[2] The FAA was established pursuant to the Federal Aviation Act of 1958, 72 Stat 731 (1958), 49 USC App §§ 1301 *et seq*. Its regulations are found at 14 CFR, chapter I (1994). Defendant, in this context, does not dispute that the FAA's regulations apply to its operations in Australia.

[3] We construe that as an allegation that plaintiff was fired pursuant to the direction of defendant's management in Oregon.

Plaintiff sued defendant for wrongful discharge and breach of contract. Defendant moved under ORCP 21 to dismiss plaintiff's wrongful discharge claim on two alternative theories: (1) The Federal Aviation Act preempts plaintiff's common law wrongful discharge claim; and (2) even if plaintiff's claim is not preempted by federal law, it is legally insufficient under Oregon law. The trial court, without specifying its grounds in its order, granted defendant's motion, and plaintiff subsequently voluntarily dismissed his breach of contract claim without prejudice. This appeal ensued.

■　　　We do not know the basis for the trial court's dismissal.[4] However, because both grounds that defendant argued below are properly before us as alternative bases for affirmance, we must consider whether either supports dismissal. Because defendant's preemption argument implicates our jurisdiction, we address it first. *See Derenco v. Benj. Franklin Fed. Sav. and Loan*, 281 Or 533, 537, 577 P2d 477 (1978).

In *Cipollone v. Liggett Group, Inc.*, ___ US ___, 112 S Ct 2608, 120 L Ed 2d 407 (1992), the Supreme Court restated the law of federal preemption:

> "Article VI of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' Art VI, cl 2. Thus, since our decision in *McCulloch v Maryland*, * * * it has been settled that state law that conflicts with federal law is 'without effect.' * * * Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by * * * Federal Act unless that [is] the clear and manifest purpose of Congress.' * * * Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " of preemption analysis. * * *
>
> "Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.' * * * In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law, * * *, or if federal law so thoroughly

---

[4] The parties did not designate the transcript, including the trial court's oral ruling, as part of the record on appeal.

occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it. " ' " ____ US at ____, 112 S Ct at 2617. (Citations omitted.)

Proceeding from that analysis, defendant makes two preemption arguments. First, Congress, by enacting the "complex and pervasive federal regulatory scheme" governing aircraft operations and safety, "occupied the field," leaving no room for a state common law wrongful discharge action. Second, Congress expressly preempted actions like plaintiff's when it enacted the Airline Deregulation Act of 1978. 49 USC App §§ 1301 *et seq*. Both arguments fail.

Two sections of the Federal Aviation Act are particularly pertinent. 49 USC App § 1506 provides:

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

When Congress amended the Act in 1978, enacting the Airline Deregulation Act, it retained the section 1506 "saving clause" but also added an explicit preemption provision:

"Except as provided in paragraph (2) of this subsection [concerning air transportation in Alaska], no State or political subdivision thereof * * * shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to rates, routes, or services* of any air carrier having authority under subchapter IV of this chapter to provide air transportation." 49 USC App § 1305(a)(1). (Emphasis supplied.)

■ Defendant's first argument, that, by providing a "complete scheme for governing airline safety," Congress has "occupied the field" of aviation safety, fails because:

"When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' * * * 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation. * * * Such reasoning is a variant of the familiar principle of *expressio unius est exclusio alterius*: Congress' enactment of a provision defining the pre-emptive

reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone v. Liggett Group, Inc., supra,* ____ US at ____, 112 S Ct at 2618. (Citations omitted.)

Thus, when coupled with section 1506, congressional enactment of section 1305(a)(1) precludes implicit "field preemption." *See Stewart v. American Airlines, Inc.*, 776 F Supp 1194, 1199 (SD Tex 1991) ("to the extent that a claim is not pre-empted by Section 1305, it is expressly preserved by Section 1506").

■ Nor is plaintiff's wrongful discharge claim expressly preempted by section 1305(a)(1). Defendant reasons that (1) "services," as used in that statute, encompasses safety; and (2) because plaintiff's wrongful discharge action will involve interpretation of FAA safety regulations, it implicates "services," and is, thus, preempted. We disagree. Even if we were to accept the problematic premise that "services" under section 1305(a)(1) encompasses safety, in this case safety issues are so tangential to plaintiff's wrongful discharge action as to preclude preemption on that ground.

We note at the outset that there is a severe division of authority over whether the reference to "services" in section 1305(a)(1) preempts state or local regulation or adjudication of aircraft safety.[5] We decline to enter that dispute because

_____

[5] *Compare Fenn v. American Airlines, Inc.*, 839 F Supp 1218, 1223 n 11 (SD Miss 1993) ("[T]his court seriously doubts the correctness of an analysis which essentially equates 'safety' with 'services.' "); *In re Air Disaster*, 819 F Supp 1352 (ED Mich 1993) (negligence claims arising from a mid-air airplane crash, alleging negligent maintenance and operation of airplanes, not preempted by section 1305 because not directly related to "services"); *Margolis v. United Airlines, Inc.*, 811 F Supp 318, 321 (ED Mich 1993) ("A state common law claim based on negligence and the standard of reasonable care does not purport to regulate the services that air carriers provide to their customers in exchange for their fares."); *Stewart v. American Airlines, Inc., supra*, 776 F Supp 1194 (SD Tex 1991) (plaintiff's state law tort claims based on injuries resulting from an airplane malfunction not related to "services" within the meaning of section 1305) *with French v. Pan Am Express, Inc.*, 869 F2d 1 (1st Cir 1989) (New Hampshire statute regulating circumstances under which employers could require employees to submit to drug testing impliedly preempted); *O'Carroll v. American Airlines*, 863 F2d 11 (5th Cir), *cert den* 490 US 1106 (1989) (airline passenger's state law claims following removal from flight for disorderly conduct expressly preempted by section 1305); *Williams v. Express Airlines I, Inc.*, 825 F Supp 831 (WD Tenn 1993) (passenger's action against airline for false imprisonment preempted by section 1305 because claim had close connection with airline services); *Belgard v. United Airlines*, 857 P2d 467 (Colo App 1992), *cert den* ____ US ____ (1993) (section 1305 preempted Colorado statute restricting airline's selection of pilots, because statute related to airline "services"). *See generally Morales v. Trans World Airlines, Inc.*, ____ US ____, 112 S Ct 2031, 119 L

we need not do so. Even if "relating to services" includes safety considerations, the relationship between plaintiff's wrongful discharge action and safety is "too tenuous, remote, or peripheral" to have preemptive effect. *Morales v. Trans World Airlines, Inc.*, ___ US ___, 112 S Ct 2031, 2040, 119 L Ed 2d 157 (1992). Although FAA safety violations provide the basis for plaintiff's wrongful discharge action, the substance of those safety violations is incidental to the fact that plaintiff was discharged for refusing to comply with illegal orders and to his remedies for that discharge.

Our analysis comports with that of other courts that have considered similar claims. For example, in *Pavolini v. Bard-Air Corp.*, 645 F2d 144, 147 (2d Cir 1981), plaintiff brought a wrongful discharge action in federal court, alleging that he was fired for having reported safety violations to the FAA. Plaintiff argued that the Federal Aviation Act's safety provisions gave rise to an implied right of action under the Act for wrongful discharge. The court dismissed the action for lack of jurisdiction, noting that the true basis of plaintiff's claim was not the safety violations, but the resultant discharge:

> "[W]e can assume on this record that Bard-Air has violated the Act in several respects. But nevertheless, this is an action seeking redress for loss of employment and [plaintiff's] injury does not flow, in a legal sense, from Bard-Air's failure to obey any statutory requirement or from a violation of any statutory prohibition." 645 F2d at 147. (Footnote omitted.)

*Accord Anderson v. American Airlines*, 2 F3d 590, 597 (5th Cir 1993) (airline mechanic's wrongful discharge action based on his termination for having filed for workers' compensation benefits is not preempted under the Act because a claim for money damages does not "relate to airline services," and "[a]ny effect that such a claim may have on American's services is far too remote to trigger pre-emption").

We reject defendant's express preemption argument for one final reason: The Federal Aviation Act itself provides no remedy for wrongful discharge. *See Pavolini v. Bard-Air Corp., supra*, 645 F2d at 147. Consequently, if section

Ed 2d 157 (1992) (Section 1305(a)(1) preempts state consumer protection statutes as applied to airline advertising because those statutes regulate "rates").

1305(a)(1) preempts state law-based wrongful discharge claims, employees, like plaintiff, who are fired for refusing to violate air safety regulations have no remedy for the loss of their jobs.[6] As the Supreme Court observed in an analogous context:

"It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Silkwood v. Kerr-McGee Corp.*, 464 US 238, 251, 104 S Ct 615, 623, 78 L Ed 2d 443 (1984).[7]

We turn, then, to defendant's alternative contention, that plaintiff's common law wrongful discharge claim is legally insufficient. In *Banaitis v. Mitsubishi Bank, Ltd.*, 129 Or App 371, 376, 879 P2d 1288 (1994), we described the types of wrongful discharge claims generally recognized under Oregon law:

"In general, an employer may discharge an employee at any time, for any reason, unless doing so violates a contractual, statutory or constitutional requirement. *Patton v. J. C. Penney Co.*, 301 Or 117, 120, 710 P2d 854 (1986). There are exceptions to the general rule. A cause of action will lie against an employer who discharges an employee for performing a public duty, or fulfilling a societal obligation such as serving on a jury, *Nees v. Hocks*, 272 Or 210, 219, 536 P2d 512 (1975), or refusing to commit a potentially tortious act of defamation, *Delaney v. Taco Time Int'l*, 297 Or 10, 17, 681 P2d 114 (1984). An employer also may be held liable for discharging an employee for pursuing private statutory rights that are directly related to the employment, such as resisting sexual harassment by a supervisor, *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 90-97, 689 P2d 1292 (1984), or

---

[6] Defendant contends that a wrongful termination action is not necessary to ensure airline safety because the FAA provides extensive airline safety regulations and administrative complaint and enforcement procedures. However, those regulations and procedures, which go solely to enforcing safety standards, would be cold comfort for employees who are ordered to violate safety regulations, much less to those fired for refusing to obey such orders.

[7] In *Silkwood*, the court held that state tort law damages, including punitive damages, were available for injuries caused by nuclear hazards, notwithstanding federal preemption of all safety aspects of nuclear development, including imposition of civil penalties for safety violations. After *Silkwood*, Congress enacted the Price-Anderson Amendments Act of 1988, 42 USC §§ 2014, 2210, which created a federal cause of action and established federal jurisdiction for individual incidents of claimed personal injury from radiation exposure. *See O'Conner v. Commonwealth Edison Co.*, 13 F3d 1090 (7th Cir), *cert den* ___ US ___, 114 S Ct 2711, 129 L Ed 2d 838 (1994).

filing a claim for workers' compensation benefits, *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978)."

The availability of a common law remedy is further conditioned upon the absence of adequate statutory remedies: "[W]here an adequate existing remedy protects the interests of society * * * an additional remedy of wrongful discharge will not be accorded." *Delaney v. Taco Time Int'l, supra*, 297 Or at 16; *see Walsh v. Consolidated Freightways*, 278 Or 347, 563 P2d 1205 (1977). Thus, the availability of an adequate statutory remedy precludes an otherwise sufficient common law wrongful discharge claim. *Holien v. Sears, Roebuck and Co., supra*, 298 Or at 97; *Farrimond v. Louisiana-Pacific Corp.*, 103 Or App 563, 566, 798 P2d 697 (1990).

Defendant asserts that plaintiff's claim fails for two reasons: (1) Plaintiff's discharge for refusing to install defective parts in an airplane does not fall within the "societal obligation or public duty" exception to the general rule for "at will" employees. (2) In any event, plaintiff had an adequate statutory remedy under Oregon's workplace safety "whistleblower" statute, ORS 645.062(5). Again, we disagree.

■ Plaintiff's discharge falls within the "societal obligation or public policy" exception. Plaintiff alleges — and, for present purposes, we assume — that he was fired for refusing to violate FAA safety regulations and for refusing to participate in defendant's active cover-up of those violations. The ramifications of violations are obvious. It is difficult, from those pleadings, to imagine a more compelling example of a "public policy or societal obligation" wrongful discharge.[8] *Accord Delaney v. Taco Time Int'l, supra*, 297 Or at 16 (employee fired for refusing to sign a false and arguably tortious statement was fulfilling a societal obligation and could recover for wrongful discharge); *Banaitis v. Mitsubishi Bank, Ltd., supra*, 129 Or App at 380 (bank employee discharged for refusing to disclose confidential customer financial information falls within the societal obligation exception).

---

[8] "[A]ir safety ranks somewhere in pecking order between motherhood and the American flag." *F.A.A. v. Landy*, 705 F2d 624, 637 (2d Cir), *cert den* 464 US 895 (1983) (Van Graafeiland, J., concurring in part and dissenting in part).

■ Thus, defendant's position reduces, finally, to the proposition that plaintiff has an adequate and, thus, exclusive statutory remedy under the "whistleblower" protections of the Oregon Safe Employment Act (OSEA), ORS 654.062(5). That subsection provides:

> "(a) It is an unlawful employment practice for any person to bar or discharge from employment or otherwise discriminate against any employee or prospective employee because such employee has opposed any practice forbidden by [the Oregon Safe Employment Act] * * *.

> "(b) Any employee or prospective employee who believes that the employee has been barred or discharged from employment or otherwise discriminated against * * * may, * * * file a complaint with the Commissioner of the Bureau of Labor and Industries * * *. The affected employee shall also have the right to bring a suit in any circuit court of the State of Oregon * * *. The commissioner or the circuit court may order all appropriate relief including rehiring or reinstatement of the employee to the employee's former position with back pay."

Plaintiff argues that the statute does not afford him an adequate remedy for a variety of reasons. Because we agree with plaintiff's first argument, that the OSEA, including ORS 654.062(5), does not apply to employees working outside of Oregon, we do not consider the others.[9]

ORS 654.003 expresses the legislature's policy in enacting the OSEA:

> "The purpose of the Oregon Safe Employment Act is to assure as far as possible safe and healthful working conditions for every working man and woman *in Oregon,* to preserve our human resources * * *." (Emphasis supplied.)

Subsequent sections of the OSEA specifically forbid employers from creating or maintaining unsafe places of employment and require employers to comply with safety regulations. ORS 654.010; ORS 654.015; ORS 654.022.[10] Towards

---

[9] Plaintiff also argues that: The OSEA does not apply to violations of federal law and the OSEA's remedies are so inadequate that they do not preclude common law wrongful discharge claims.

[10] ORS 654.010 provides:

> "Every employer shall furnish employment and a place of employment which are safe and healthful for employees therein, and shall furnish and use

those ends, the OSEA authorizes the Director of the Department of Consumer and Business Services to set and enforce safety and health standards and procedures to achieve the statute's objectives. ORS 654.003. In particular:

> "The director is vested with full power and jurisdiction over, and shall have such supervision of, every employment and place of employment *in this state* as may be necessary to enforce and administer all laws, regulations, rules, standards and lawful orders requiring such employment and place of employment to be safe and healthful * * *." ORS 654.025(1). (Emphasis supplied.)

The OSEA, by its terms, is limited to the maintenance of safe working conditions in Oregon. The "whistleblower" protections of ORS 654.062(5)(a) are, necessarily, congruent with the OSEA's general territorial scope. Consequently, an employee who opposes a practice which would otherwise be forbidden by the OSEA, but which occurs at a place of employment outside of Oregon, has no statutory remedy under ORS 654.062(5)(a). Plaintiff is such an employee; accordingly, his common law claim is not precluded by the availability of a statutory remedy.

The trial court erred in dismissing plaintiff's wrongful discharge claim.

Reversed and remanded.

---

such devices and safeguards, and shall adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment safe and healthful, and shall do every other thing reasonably necessary to protect the life, safety and health of such employees."

ORS 654.015 provides:

"No employer or owner shall construct or cause to be constructed or maintained any place of employment that is unsafe or detrimental to health."

ORS 654.022 provides:

"Every employer, owner, employee and other person shall obey and comply with every requirement of every order, decision, direction, standard, rule or regulation made or prescribed by the department in connection with the matters specified in [the OSEA], or in any way relating to or affecting safety and health in employments or places of employment, or to protect the life, safety and health of employees in such employments or places of employment, and shall do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction, standard, rule or regulation."