With these amendments, the opinion dated October 6, 1997 is amended.

**ALOHA ISLANDAIR INC.,**
Plaintiff–Appellee,

v.

**Linda TSEU, Executive Director, Hawaii Civil Rights Commission; Hawaii Civil Rights Commission, State of Hawaii,** Defendants–Appellants.

No. 95–16656.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1997.

Decided Oct. 14, 1997.

Girard D. Lau, State of Hawaii Department of the Attorney General, Honolulu, HI, for defendants-appellants.

Richard M. Rand, Torkildson, Katz, Jossem, Fonseca, Jaffe, Moore & Hetherington, Honolulu, HI, for plaintiff-appellee.

Before: NORRIS, HALL, and TASHIMA, Circuit Judges

WILLIAM A. NORRIS, Circuit Judge:

This action was brought by Aloha Islandair, Inc. ("Islandair") seeking declaratory and injunctive relief to prohibit the Hawaii Civil Rights Commission and its Executive Director, Linda Tseu, from applying and enforcing the disability discrimination provisions of Haw.Rev.Stat. § 378–2(1), against Islandair with respect to a monocular pilot applicant, Bruce Pied ("Pied").

Islandair has a policy of not hiring monocular pilots. In 1991 Pied filed a charge of disability discrimination with the Commission. In 1994 he filed a second disability discrimination charge, coupled with a charge that Islandair had retaliated against him for filing the 1991 charge.

Islandair asserted that the Commission and Tseu may not proceed with their investigation of Pied's charges because of the preemptive effect of the Airline Deregulation Act ("ADA") of 1978. 49 U.S.C.App. § 1305(a)(1).

The district court awarded Islandair summary judgment, relying upon *Belgard v. United Airlines, Inc.*, 857 P.2d 467 (Colo.Ct. App.1992), *cert. denied*, 510 U.S. 1117, 114 S.Ct. 1066, 127 L.Ed.2d 386 (1994), which held that Colorado's disability discrimination law, as applied to airline pilots, was preempted by the ADA.

The district court further held that Pied's 1994 retaliation claim was also preempted because it was "an ill-disguised attempt to bootstrap upon his prior charge." Order Granting Islandair Summary Judgment, p. 4, filed July 13, 1997.

Defendant Tseu appeals.[1]

# I

The express preemption clause of the Airline Deregulation Act provides:

[N]o state ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to* rates, routes, or *services* of any air carrier having authority ... to provide air transportation.

49 U.S.C.App. § 1305(a)(1) (emphasis added). The term "services" may include anything an airline offers in return for a fare, including ticketing and boarding procedures, food and drink, baggage handling, and transportation. *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (en banc). The phrase "relating to" should be construed broadly to mean "has a connection with or reference to." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). However, a connection that is "too tenuous, remote, or peripheral" will not lead to preemption. *Id.* at 390, 112 S.Ct. at 2040.

Islandair does not dispute that state laws prohibiting employment discrimination based on race, color, religion, or sex are not preempted by the ADA. *See, e.g., Colorado Anti–Discrimination Comm'n v. Continental Air Lines*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) (before ADA, no implied preemption of state law race discrimination statute because state law would not frustrate purposes of Federal Aviation Act). Islandair asks us to carve out an exception, however, for the physically disabled by arguing that laws barring discrimination against the disabled are different—and subject to preemption—even if laws barring discrimination on the basis of race, gender, or other grounds are not. Islandair's "justification" for treating physical-disability discrimination differently from other employment discrimination is that a physical disability could disqualify a person from flying aircraft safely. Islandair maintains that laws affecting the *safety* of aircraft operation are preempted because they relate to "services" provided by air carriers. We need not decide that unsettled question of law, however, because we agree with appellant Tseu that Pied's disability discrimination claim does not raise significant safety concerns.[2]

---

1. The district court also dismissed the action against the Hawaii Civil Rights Commission on Eleventh Amendment grounds. Islandair does not appeal this dismissal.

2. Appellant Tseu disagrees with Islandair that laws concerning safety are preempted by the Airline Deregulation Act because they relate to services provided by air carriers. Although we

At the times Islandair refused to hire him as a pilot, Pied, despite his monocular vision, had received full medical approval to fly by the Federal Aviation Administration ("FAA"), and he was in fact a pilot for another airline authorized to fly even more complex aircraft than those he would have flown for Islandair. The federal regulations do not flatly prohibit monocular pilots, but allow persons who do not meet every single medical criterion to apply for the "discretionary issuance of a certificate under § 67.19." 14 C.F.R. § 67.13(g). Under 14 C.F.R. § 67.19, an applicant can receive a medical certificate "if the applicant shows to the satisfaction of the Federal Air Surgeon that the duties authorized by the class of medical certificate applied for can be performed *without endangering air commerce* . . . ." (Emphasis added). Given the stringent FAA requirements that a pilot must satisfy, Islandair's argument that physical-disability discrimination claims are preempted because they affect safety (and safety relates to services) is just as untenable as an argument that racial or gender discrimination claims are preempted. The pervasive role that the FAA plays in assuring that airline pilots are qualified to do their job safely renders the connection between disability discrimination claims and air carrier services "too tenuous, remote [and] peripheral" for the claims to be preempted. See *Morales*, 504 U.S. at 390, 112 S.Ct. at 2040.

Pied, despite his monocular vision, received full FAA medical approval to fly, including certification that he "had satisfactorily demonstrated [his] ability to carry out safely the duties appropriate to [his] airman certificate." As appellant Tseu stated, "Indeed, Pied's discrimination claim is necessarily rooted in the notion that his monocular vision does not hinder his ability to safely

pilot airplanes and thus to not hire him because he is monocular is to illegally discriminate under HRS chapter 378. For if in fact Pied's monocular vision impaired his ability to safely fly an airplane, then there would be no illegal discrimination."[3] Appellant's Br. at 16.

In sum, we see no congressional purpose that would be served by denying to FAA-certified pilots, in the name of preemption, the protection of Hawaii's law from employment discrimination based on physical disability. See *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617–18, 120 L.Ed.2d 407 (1992) ("the purpose of Congress is the ultimate touchstone of preemption analysis"). Our view is buttressed by the fact that when Congress passed the Americans with Disabilities Act of 1990, it provided civil remedies enforceable in both state and federal courts without exempting pilots or expressing any concern whatsoever that airline safety would be compromised, see 42 U.S.C. § 12111, *et seq.*, and we see no reason why Congress would have had any such concerns about the enforcement of state disability discrimination laws when it enacted the Airline Deregulation Act.

Islandair cites *Robinson v. American Airlines*, 908 F.2d 1020 (D.C.Cir.1990), as authority that "courts have traditionally accorded airlines wide deference in establishing their own 'qualifications' for pilot applicants." Appellee's Br. at 17 (internal quotation marks added). Islandair's reliance on *Robinson* is misplaced. The D.C. Circuit did not defer to the airlines in *Robinson*. In fact, whether to grant deference to airlines on any matter is a matter of policy beyond the province of courts. Rather than deferring to the airlines, the D.C. Circuit in *Robinson* de-

---

do not decide this question of first impression in our circuit, we note that there is a split of authority on the question. See, e.g., *Anderson v. Evergreen Int'l Airlines, Inc.*, 131 Or.App. 726, 886 P.2d 1068, 1071 (1994) ("We note at the outset that there is a severe division of authority over whether the reference to 'services' in section 1305(a)(1) preempts state or local regulation or adjudication of aircraft safety.") (footnote omitted) (collecting cases).

**3.** As Haw.Rev.Stat. § 378–3(2) & (3) makes clear:

Nothing in this part shall be deemed to:

. . . .

(2) Prohibit or prevent the establishment and maintenance of bona fide occupational qualifications reasonably necessary to the normal operation of a particular business or enterprise, and that have a substantial relationship to the functions and responsibilities of prospective or continued employment;

(3) Prohibit or prevent an employer . . . from refusing to hire . . . any individual for reasons relating to the ability of the individual to perform the work in question.

ferred to the Department of Labor in upholding regulations that represented an interpretation of the ADA by the agency expressly charged by Congress with that responsibility. *Id.* at 1023. The regulations permitted airlines to apply criteria higher and more competitive than FAA requirements in deciding whether to hire personnel who had been granted rights of first hire by the Act. The case had nothing to do with whether Congress intended the Act to preempt state laws prohibiting discrimination based upon perceived physical disabilities. We agree with appellant Tseu that *Robinson* "plainly does not authorize wholly unfettered discretion in hiring decisions, and certainly does not condone irrational disability discrimination." Reply Br. at 7. A discriminatory hiring practice cannot be couched as a mere qualification standard, even if it invokes a concern for safety as its animating force.[4]

## II

Appellant Tseu argues that Pied's retaliation claim is not preempted by the ADA because retaliation relates only to vindictive hiring practices, not to airline services. *See* Appellee's Br. at 8–10. Appellant Tseu further argues that a retaliation claim is separate and distinct from the discrimination complaint on which it is based, and that preemption of the discrimination claim does not mean the retaliation claim is preempted also. *See id.* Islandair argues that Pied's retaliation claims are "parasitic" of his 1991 discrimination charge in the sense that his retaliation claim can survive only if his discrimination claim has merit. Appellee's Br. at 27–28. Since Pied's discrimination claim is preempted, Islandair argues, his retaliation claim is also preempted.

On its face, the Hawaii statute prohibiting retaliation does not condition the retaliation claim on the merit of the underlying discrimination claim. *See* Haw.Rev.Stat. § 378–2(1) & (2). Rather, the statute prohibits an employer from discriminating against an individual who "has filed a complaint . . .

respecting the discriminatory practices prohibited under this part." Haw.Rev.Stat. § 378–2(2). Thus, Islandair would be liable for retaliation if it refused to hire Pied in 1994 solely because Pied filed a 1991 discrimination complaint, regardless of Pied's monocular vision. Pied's success or failure on the discrimination claim, therefore, has no bearing on his retaliation claim. Moreover, even if a pilot-applicant's disability discrimination claim were preempted by the ADA because it relates to pilot qualifications, a pilot-applicant's retaliation claim would still not be preempted by the ADA because retaliation against someone for being litigious has nothing to do with the quality or safety of airline services. *See Anderson v. American Airlines,* 2 F.3d 590, 597 (5th Cir.1993) (aircraft mechanic's retaliation claim seeking monetary damages not preempted by ADA because too remotely related to services); *Ruggiero v. AMR, Corp.,* 1995 WL 549010 at *9 (N.D.Cal.1995) ("It is not reasonable to believe that retaliatory discharge claims have a 'connection with or reference to' air carrier services" and any effect on services "is far 'too tenuous, remote, or peripheral' to have pre-emptive effect."); *Anderson v. Evergreen Int'l Airlines, Inc.,* 131 Or.App. 726, 886 P.2d 1068 (1994) (aircraft mechanic's claim of wrongful discharge not preempted by ADA because safety violations incidental to discharge for refusing to comply with illegal orders). *But cf. Marlow v. AMR Serv. Corp.,* 870 F.Supp. 295, 298–99 (D.Hawai'i 1994) (jetbridge maintenance supervisor's claim under Hawaii Whistleblower's Act preempted by ADA because the maintenance of jetbridges affects passenger boarding procedures, and boarding procedures constitute "services").

We VACATE the summary judgment for appellee Islandair and REMAND for further proceedings consistent with this opinion.

---

4. Islandair relies, as did the district court, on *Belgard v. United Airlines,* 857 P.2d 467 (Colo.Ct. App.1992), *cert. denied,* 510 U.S. 1117, 114 S.Ct. 1066, 127 L.Ed.2d 386 (1994), which held that the ADA preempted Colorado's anti-discrimination statute as applied to pilot applicants who

had undergone radial keratotomy surgery to alleviate nearsightedness. We realize that our analysis of the preemption issue is at odds with *Belgard's,* but with all respect, we decline to follow *Belgard.*