Dennis **ESPINOSA**, Plaintiff,

v.

**CONTINENTAL AIRLINES,** Manny Horta, Daniel Wineglass, and Jim McGuiness, individually, Defendants.

**No. CIV. 99–1925(WGB).**

United States District Court,
D. New Jersey.

Jan. 14, 2000.

Matthew Grabell, Deutsch Resnick Green & Gramigna, Hackensack, NJ, for Plaintiff Dennis Espinosa.

Robert H. Bernstein, Epstein Becker & Green, P.C., Newark, NJ, for Defendant Continental Airlines, Inc.

## OPINION

BASSLER, District Judge.

Plaintiff Dennis Espinosa ("Plaintiff") moves to remand under 28 U.S.C. § 1447(c), for lack of subject matter jurisdiction and for fees and costs. Plaintiff's motion to remand is **granted** and Plaintiff's motion for fees and costs is **granted in part and denied in part**. This action is **remanded** to the Superior Court of New Jersey, Passaic County.

## I. BACKGROUND

Plaintiff was an employee of Defendant Continental Airlines, Inc. ("Continental"). He worked as an aircraft technician in charge of inspecting various aircrafts prior to takeoff. (Compl.¶ 6.) Defendants Manny Horta ("Horta") and Daniel Wineglass ("Wineglass") were Plaintiff's supervisors during the relevant time periods. (*Id.* at ¶ 3–4.) Defendant Him McGuiness ("McGuiness") was the Director of Newark Aircraft Maintenance, during the relevant time periods. (*Id.* at ¶ 5.)

In the Complaint, Plaintiff alleges that on separate occasions throughout his employment, while inspecting aircrafts prior to takeoff, he discovered mechanical problems, which he believed constituted violations of Federal Aviation Regulation. (*Id.* at ¶¶ 8–14.) At various times, he reported these problems to either Horta or Wineglass. (*Id.* at ¶¶ 8–10, 14.) Plaintiff claims that in response to each occasion, Horta and Wineglass used choice words to inform Plaintiff, in essence, that such problems were not his concern. (*Id.* at ¶¶ 8–10.)

Plaintiff also complained to McGuiness regarding some of the mechanical problems. (*Id.* at ¶ 11.) In response, McGuiness allegedly threatened Plaintiff with retaliation if he contacted the Federal Aviation Authority ("FAA"). (*Ibid.*) Nevertheless, Plaintiff reported some of the problems to the FAA. (*Id.* at ¶¶ 8, 11.)

Subsequently, on March 21, 1998, Wineglass accused Plaintiff of sleeping while on duty. (*Id.* at 15.) By letter dated April 2, 1998, McGuiness notified Plaintiff that he was being terminated "effective immediately," for sleeping while on duty. (*Id.* at ¶ 16.)

On March 22, 1999, Plaintiff initially filed this action in the Superior Court of New Jersey, Passaic County. Plaintiff is suing under the Conscientious Employee Protection Action ("CEPA"), N.J.S.A.

34:19–1 to 34:19–8, for retaliatory discharge.

On April 27, 1999, Continental removed this action to this Court pursuant to 28 U.S.C. § 1441, contending original jurisdiction under 28 U.S.C. §§ 1331 and 1337.

Plaintiff now seeks to remand this action claiming that no federal subject matter jurisdiction exists because the Complaint contains solely state law claims and because the parties are non-diverse.[1] Continental argues, however, that Plaintiff's CEPA claims are completely preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 41713(b)(1), ("FAAAA"), and are also governed exclusively by the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA"). Moreover, Continental also contends that this Court has diversity jurisdiction because Plaintiff has not presented viable claims against the individual Defendants. Each of these contentions will be addressed in turn.

## II. DISCUSSION

### A. Standards Governing Motion to Remand

Upon a motion to remand, the removing party bears the burden of demonstrating that removal was proper. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990). The removing party thus bears the burden of proving that jurisdiction is proper in federal court. *Ibid.* Further, removal statutes are strictly construed in favor of remand. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987).

Because the parties are non-diverse and removal jurisdiction is predicated on the existence of original federal jurisdiction, the first question that must be addressed is whether the complaint pleads a federal cause of action under the well-pleaded complaint rule. *Louisville & Nashville*

---

1. Plaintiff and Defendants Horta, Wineglass, and McGuiness, are all New Jersey residents. Continental is a Delaware Corporation with its principal place of business in Houston, Texas.

*Railroad v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

Under the "well-pleaded complaint rule," removal is appropriate only where a federal question appears on the face of the complaint. *Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *accord In re U.S. Healthcare, Inc.,* 193 F.3d 151, 160 (3d Cir.1999); *Joyce v. RJR Nabisco Holdings Corp.,* 126 F.3d 166, 171 (3d Cir.1997); *Dukes v. U.S. Healthcare,* 57 F.3d 350, 353 (3d Cir.1995). "[W]here a plaintiff's complaint on its face states only state law causes of action, the fact that issues of federal law may be involved, as in the nature of a defense, will not suffice to create federal question jurisdiction." *Carrington v. RCA Global Communications, Inc.,* 762 F.Supp. 632, 636 (D.N.J.1991). This rule was designed to make the plaintiff "master of the claim." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

A narrow exception to this rule, however, exists. Congress may "completely pre-empt" an area of law, with the result that a claim which falls within the area is " 'necessarily federal in character.' " *In re U.S. Healthcare,* 193 F.3d at 160; *Dukes,* 57 F.3d at 354; *Joyce,* 126 F.3d at 171. Complete preemption is appropriate when federal law so completely preempts a cause of action that state law is "entirely displaced by federal law." *Joyce,* 126 F.3d at 171. When complete preemption occurs, the complaint need not satisfy the well-pleaded complaint rule. *Ibid.*

Under settled Third Circuit law, the doctrine of complete preemption applies *only* when two circumstances are present: (1) when the enforcement provisions of a federal statute create a federal cause of action vindicating the same interest that the plaintiff's cause of action seeks to vindicate; and (2) when there is affirmative evidence of a congressional intent to permit removal despite the plaintiff's exclusive reliance on state law. *Allstate Ins. Co. v. 65 Sec. Plan,* 879 F.2d 90, 93 (3d Cir.1989); *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 311 (3d Cir.1994).

### B. Preemption of CEPA by Federal Aviation Administration Authorization Act

Congress enacted the FAAAA[2] largely to deregulate domestic air transport after determining that " 'maximum reliance on competitive market forces' would best further 'efficiency innovation, and low prices' as well as 'variety [and] quality . . . of air transportation services.' " *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (citing 49 U.S.C.App. § 1302(a)(4), 1302(a)(9)). The FAAAA contains a preemption provision " '[t]o ensure that the States would not undo federal deregulation with regulation of their own.' " *Ibid.* That provision states in pertinent part:

> [e]xcept as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of an air carrier that may provide air transportation under this subpart.*

49 U.S.C. § 41713(b)(1)(emphasis added).

Continental opposes Plaintiff's motion to remand, contending that the FAAAA preempts state whistleblower claims because of the FAAAA's sweeping preemptive force. *See Morales,* 504 U.S. 374, 112

---

**2.** The Federal Aviation Act of 1958, 49 U.S.C. § 1301, *et seq.* was amended in 1978, enacting the Airline Deregulation Act ("ADA"). In 1994, without intending to make any substantive changes, Congress reenacted Title 49 of the United States Code and renamed it the FAAAA. *See American Airlines, Inc. v. Wolens,* 513 U.S. 219, 223 n. 1, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). Hence, the terms "FAAAA" and "ADA" are interchangeable.

S.Ct. 2031, 119 L.Ed.2d 157 (finding that states' efforts to enforce state law prohibiting deceptive advertising by airlines fell within the preemptive scope of the ADA). This statement is, however, too broad. Although the Court's holding in *Morales* appeared to suggest a broad interpretation of the "related to" phrase, the Court also cautioned that the ADA's preemptive sweep was not unlimited and did not preempt state actions that were "too tenuous, remote, or peripheral." *Id.* at 390, 112 S.Ct. 2031; *Ruggiero v. AMR, Corp.,* 1995 WL 549010, at *7–8 (N.D.Cal. Sept.12, 1995). Continental's reliance on the general sweeping preemptive force of the FAAAA ignores the cautionary note issued in *Morales.*

Continental also urges that Plaintiff's CEPA claims are "related to" the quality of services rendered by an airline because it affects Continental's ability to discipline employees whose work is integral to "air services" and to air safety, which is one of Congress' primary goals in enacting the FAAAA. To support its position, Continental relies on *Marlow v. AMR Services Corp.,* 870 F.Supp. 295 (D.Hawai'i 1994). Therein, the plaintiff, a supervisor for a jetbridge maintenance company, reported to his employer the existence of serious "health and safety" violations at the jetbridge maintenance facility. Subsequently, the plaintiff was terminated. The plaintiff filed a complaint alleging that because he was fired for raising the safety concerns, his termination contravened the Hawaii's Whistleblower Protection Act ("HWPA") and public policy. The court stated that the plaintiff's claims "necessarily have connection with or reference to air carrier services" and concluded that the HWPA claims were preempted by the ADA. The *Marlow* court did not, however, explain why plaintiff's state law claims had a connection with or reference to air carrier services. *Ruggiero,* 1995 WL 549010, at *9. This Court disagrees with the decision in *Marlow* and instead, agrees with the holdings of *Anderson v. American Airlines, Inc.,* 2 F.3d 590 (5th Cir.), *reh'g*

*denied* 9 F.3d 105 (5th Cir.1993) and *Ruggiero v. AMR, Corp.,* 1995 WL 549010 (N.D.Cal. Sept.12, 1995).

In *Anderson,* 2 F.3d at 597 relying on the Supreme Court's cautionary note in *Morales,* the Fifth Circuit concluded that the ADA does not preempt a claim for money damages for retaliatory discharge. In that case, the plaintiff sued in state court alleging that American Airlines terminated him in retaliation for filing a worker's compensation claim. On its face, the complaint did not state a federal cause of action. The Fifth Circuit noted that "[a]ny effect that such a [state law] claim may have on American's services is far too remote to trigger pre-emption" by the ADA. *Ibid.*

Similarly, in *Ruggiero,* 1995 WL 549010, the court, following *Anderson,* found that the ADA did not preempt the plaintiff's state law claims, including the plaintiff's claim for wrongful discharge in retaliation for making safety complaints.

Here, Plaintiff's CEPA claims do not vindicate the same interest protected by the enforcement provisions of the FAAAA. As stated by the *Ruggiero* court, it is not reasonable to believe that a retaliatory discharge claim is in any way "related to" air carrier services. The crux of Plaintiff's claims is that he was improperly discharged for refusing to participate in certain actions that he believed were either illegal or in violation of public policy. Here, any effect that such claims may have on Continental's services is "too tenuous, remote or peripheral" to be completely preempted. *See Ruggiero,* 1995 WL 549010, at *9. Additionally, there is no evidence that Plaintiff's CEPA claims will frustrate the FAAAA's purpose to promote "competitive market forces." *See ibid.*

Moreover, for complete preemption, the Third Circuit has also required that there be affirmative evidence of congressional intent to permit removal despite the plaintiff's exclusive reliance on state law. *All-*

*state Ins. Co.,* 879 F.2d at 93. It cannot be stated that Congress clearly intended for a plaintiff's state law claim for retaliatory discharge to be preempted by the FAAAA. *See Anderson,* 2 F.3d at 598.

In addition to relying on *Marlow,* Continental suggests that safety concerns in aviation are governed exclusively by the Federal Aviation Act of 1958, and that "services," as used in the preemption provision of the FAAAA, encompasses safety. Even assuming that argument to be correct, safety issues are not at the heart of, and are in fact tangential, to Plaintiff's claims that he was improperly discharged. *See Anderson v. Evergreen Int'l Airlines, Inc.,* 131 Or.App. 726, 886 P.2d 1068 (1994). Plaintiff's CEPA claim, in Continental's own words, "strikes at the heart of Continental's ability to *discipline* employees ..." Def.'s Br. In Opp'n to Motion, at 7 (emphasis added). Determining whether "discipline" undertaken by the air carrier is proper does not, contrary to Continental's insistence, relate to what safety standards or services the air carrier itself must follow or provide. Furthermore, a state law prohibiting retaliatory discharge for whistleblowing only furthers the federal interest in the safety of the airline industry by encouraging employers to report unsafe conditions. *Cf. Palladino v. VNA of Southern New Jersey, Inc.,* 68 F.Supp.2d 455, 466 (D.N.J.1999).

Additionally, if the FAAAA preempted CEPA, Plaintiff, and others in his situation, who are terminated for allegedly refusing to ignore violations of federal air safety regulations, would have no legal recourse for retaliatory discharge. *See ibid.* In effect, the airline industry would be exempt from CEPA and have no incentive to refrain from taking retaliatory action against its employees.

Plaintiff's CEPA claims are not preempted by the FAAAA; hence the FAAAA does not provide a basis for federal question jurisdiction over this action.

### B. *Preemption of CEPA by Railway Labor Act*

 Congress enacted the RLA to promote stability between labor and management in the railroad industry and to, among other things, "provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a; *Anderson,* 2 F.3d at 594. The RLA is applicable to the airline industry. 45 U.S.C. §§ 181–88. "The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" must be arbitrated. 45 U.S.C. § 184. Such controversies have been termed "minor disputes." *Anderson,* 2 F.3d at 594; *see Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 321–22, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Morales,* 894 F.2d at 745. A "minor dispute" is subject to compulsory and binding arbitration. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 303–04, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). State law claims involving minor disputes are preempted. *Anderson,* 2 F.3d at 594 (citing *Consolidated Rail Corp.,* 491 U.S. at 303–04, 109 S.Ct. 2477).

 Generally, a dispute is "minor" if it may be conclusively resolved by interpreting the existing collective bargaining agreement ("CBA"). *Consolidated Rail,* 491 U.S. at 305, 109 S.Ct. 2477; *see also Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 564–65, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (confirming that "minor disputes" subject to RLA arbitration are those that involve duties and rights created or defined by the collective bargaining agreement). "Conversely, if a plaintiff's state law claim does not require an interpretation of a collective bargaining agreement, then the claim does not involve a minor dispute, the RLA does not pre-

empt the claim, and a state court is a proper forum." *Anderson,* 2 F.3d at 595. *Compare Espinal v. Northwest Airlines,* 90 F.3d 1452, 1458, n. 6 (9th Cir.1996) (holding that plaintiff's disability discrimination claims are not preempted by RLA because such claims are not dependent on an interpretation of the collective bargaining agreement), *with Croston v. Burlington Northern R.R. Co.,* 999 F.2d 381 (9th Cir.1993) (holding that RLA preempts plaintiff's discrimination claim because such claim could not be resolved without interpreting CBA).

This preemption analysis is virtually identical to the test set forth by the Supreme Court in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) to determine when § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 preempts state law claims. *Hawaiian Airlines v. Norris,* 512 U.S. 246, 260, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). That is, a state law claim is preempted where the resolution of that claim depends on the interpretation of a collective bargaining agreement. *Lingle,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410; *see also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (holding that only state law claims that are "inextricably intertwined with considerations of the terms of the labor contract" are preempted by § 301).

In *Lingle,* the plaintiff, an employee covered by a labor agreement, filed a grievance pursuant to her CBA after allegedly being fired for filing a false worker's compensation claim. The appellate court had held that the plaintiff's state law claim of retaliatory discharge was preempted because "the same analysis of the facts" was required in both the grievance proceeding and the state action. *Lingle,* 486 U.S. at 408, 108 S.Ct. 1877. In reversing, the Supreme Court observed that:

> "[T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he

was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." [citations omitted]. Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge, [citations omitted]; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 preemption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

*Id.* at 407, 108 S.Ct. 1877.

Because of this convergence in the preemption standards under the RLA and the LMRA, the Supreme Court in *Norris,* expressly adopted *Lingle* to resolve claims of RLA preemption. 512 U.S. at 263, 114 S.Ct. 2239. In *Norris,* the plaintiff was an aircraft mechanic who alleged that she was terminated for reporting safety concerns to the FAA. The Supreme Court determined that, independent of any provision of the CBA, the state law obligated the defendants not to fire the plaintiff in retaliation for whistleblowing. *Id.* at 258, 114 S.Ct. 2239. Moreover, relying on *Lingle,* the Court determined that the plaintiff's claims for retaliatory discharge under the state's whistleblower protection law involved purely factual questions. Therefore, it held that the plaintiff's claims were not preempted by the RLA. *Id.* at 266, 114 S.Ct. 2239.

Here, Plaintiff's retaliatory discharge claims also do not require interpretation of

a collective bargaining agreement, involve purely factual questions, and accordingly, are not preempted by the RLA. *See Norris*, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203; *see also Maher v. New Jersey Transit Rail Operations, Inc.*, 125 N.J. 455, 593 A.2d 750 (1991) (holding that RLA did not preempt plaintiff's CEPA claim). First, CEPA proscribes conduct and establishes rights and obligations independent of a labor contract. *See Lueck*, 471 U.S. at 212, 105 S.Ct. 1904. In fact, during Plaintiff's entire period of employment at Continental, there was *no* collective bargaining agreement that governed the terms of his employment. Affidavit of Dennis Espinosa, ("Espinosa Aff."), ¶ 3. This is undisputed by Continental. Instead, Continental and the Union had agreed to an Interim Grievance Procedure about five months before Plaintiff's termination. The Interim Grievance Procedure established a grievance/arbitration procedure relating solely to discipline and discharge procedures, including appeals to the System Board of Adjustment. *See* Ex. A attached to Certification of Robert H. Bernstein ("Bernstein Cert.").

Second, because there was no CBA, it follows that the allegations of retaliatory discharge do not require interpretation of a collective bargaining agreement. Continental argues that because Plaintiff invoked the Interim Grievance Procedure to resolve his claim, Plaintiff thereby acknowledged that his claim of retaliatory discharge constituted a "minor dispute." Continental also concludes that by submitting his claim to the System Board of Adjustment, Plaintiff acknowledged that the RLA preempts any state law claim Plaintiff may have had. The Court disagrees.

As stated in Plaintiff's affidavit, the Interim Grievance Procedure did not exist pursuant to a collective bargaining agreement. Espinosa Aff., ¶ 4. Even if the Interim Grievance Procedure was meant to constitute a temporary CBA, Plaintiff does not question the propriety or meaning of the procedures set forth under the Interim Grievance Procedure. Further, that agreement does not contain any statements regarding retaliatory discharge. *See* Bernstein Cert., Ex. A. Finally, resolution of Plaintiff's CEPA claims does not involve a determination of an issue that the System Board of Adjustment "might decide on the basis of an interpretation of the collective bargaining agreement, either because the employee's claim or the employer's defense relies on the agreement." *See Capraro v. United Parcel Service Co.*, 993 F.2d 328, 332 (3d Cir.1993).

Rather, Plaintiff challenges Continental's decision to terminate him, which is a fact-sensitive inquiry. To establish a CEPA claim, an employee must show that the employer retaliated against him for disclosing an act of the employer that the employee reasonably believes violates a state or federal law. N.J.S.A. § 34:19-3 (West 1999). As set forth in *Lingle*, 486 U.S. at 407, 108 S.Ct. 1877 and *Norris*, 512 U.S. at 266, 114 S.Ct. 2239, these questions pertaining to the conduct of the employee and the conduct and motivation of the employer do not involve interpretation of any terms of a CBA and are purely factual. *See also Maher*, 125 N.J. at 472, 593 A.2d 750. In short, no interpretation of the Interim Grievance Procedure or of a nonexistent CBA is necessary to resolve Plaintiff's allegations of retaliatory discharge.

Plaintiff's claims constitute an independent cause of action founded on rights created by CEPA rather than on a collective bargaining agreement; therefore, Plaintiff's CEPA claims are not preempted by the RLA.

### C. *Diversity Jurisdiction*

■ In addition to the absence of federal question jurisdiction, Plaintiff contends that there is also no diversity jurisdiction because he and the individual Defendants are New Jersey residents. Continental disputes this by arguing that the residence of the individual Defen-

dants is irrelevant because Plaintiff has not presented viable claims against them. Specifically, Continental asserts that supervisors cannot be held individually liable under CEPA. It claims that the statute, by its terms, does not allow claims against individual supervisors.

CEPA holds employers liable for retaliation against employees. "Employer" is defined as:

any individual, partnership, association, corporation or *any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent* . . .

N.J.S.A. § 34:19–2(a) (emphasis added). "Supervisor" is defined as:

any individual with an employer's organization who has the authority to direct and control the work performance of the affected employee, who has the authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains, or who has been designated by the employer on the notice required under [N.J.S.A. § 34:19–7].

Continental argues that a "supervisor" is not an "employer," and that CEPA creates a cause of action solely against "employers." It further contends that had the Legislature intended to create liability for supervisors, it would have expressly done so, as it did in the Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* ("LAD"). Indeed, the LAD contains a provision for individual liability against aidors and abettors.

The Court, however, declines to look to the LAD to determine whether liability can be extended to individuals under CEPA. The LAD defines "employer" as:

one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries.

N.J.S.A. § 10:5–5(a). This definition does not include the language "any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." This distinction is significant because the inclusion of that phrase in CEPA is what arguably creates individual liability under CEPA. *See Palladino v. VNA of Southern New Jersey, Inc.,* 68 F.Supp.2d 455, 472 (D.N.J.1999) (rejecting argument by defendants that CEPA is analogous to LAD in its definition of "employer"). Instead, in reaching its decision, the Court will be guided by other New Jersey Supreme Court and District of New Jersey cases as discussed in *Palladino.*

*Palladino* is the only decision that this Court is aware of in which the issue of whether supervisors or other employees' acting with the employer's consent can be held individually liable under CEPA has been squarely addressed. Therein, the court held that individual defendants, "including supervisory employees who act with the authorization of the employer," may be held liable under CEPA. *Id.* at 474. In so holding, the court noted that in *Young v. Schering Corp.,* 141 N.J. 16, 660 A.2d 1153 (1995), the New Jersey Supreme Court explained that the Legislature's intent in enacting CEPA was remedial and therefore, CEPA should be construed liberally. *Palladino,* 68 F.Supp.2d at 473. According to *Young,* "once a CEPA claim has been instituted, all other contract, collective bargaining agreement, state law, state rule, state regulation, or state common law claims based on the same retaliatory discharge are barred." *Ibid.*

As *Palladino* further discussed, in *Lynch v. New Deal Delivery Service, Inc.,* 974 F.Supp. 441 (D.N.J.1997), although the plaintiff's CEPA claims were barred by the statute of limitations, the court found that by filing CEPA claims, the plaintiff had waived her retaliatory discharge-based intentional infliction of emotional distress claims against all of the defendants, including two individual company executives. *Palladino,* 68 F.Supp.2d at 473. Similarly, in *Boody v. Township of Cherry Hill,* 997

F.Supp. 562 (D.N.J.1997), the court dismissed various state tort claims against the employer as well as the individual defendants after the filing of time-barred CEPA claims against both the employer and the individuals. *Ibid.* These two cases, *Lynch* and *Boody,* suggest that

> CEPA's definition of employer is broad enough to encompass individual supervisor or other agent liability, for there is no indication that the Legislature intended to bar common law claims against individuals upon the filing of a CEPA claim if the CEPA claim cannot be properly filed against those individuals.

*Ibid.*

Furthermore, the *Palladino* court pointed out that the ruling of the New Jersey Supreme Court in *Higgins v. Pascack Valley Hospital,* 158 N.J. 404, 730 A.2d 327 (1999), also indicates that CEPA provides a cause of action against individual defendants. *Palladino,* 68 F.Supp.2d at 473–74. In *Higgins,* the employee sued brought an action against the employer and supervisors for defamation and violations of CEPA. The jury reached a verdict holding the employer liable under CEPA. *Higgins,* 158 N.J. at 409, 730 A.2d 327. The trial court, however, dismissed the retaliation claims against the plaintiff's co-workers and supervisors, concluding that CEPA did not extend liability to individuals. *Id.* at 416, 730 A.2d 327. On appeal, the Supreme Court did not address the trial court's holding that there is no individual liability under CEPA; instead, it affirmed the decision of the trial court, finding that on the merits, the record did not support any liability against the individual defendants anyway. *Id.* at 425, 730 A.2d 327. "Presumably the Supreme Court would not look to whether there was individual liability if the law did not allow for individual liability." *Palladino,* 68 F.Supp.2d at 474.

This Court agrees with the well reasoned interpretation set forth in *Palladino* of *Higgins, Lynch,* and *Boody* and finds that individual defendants, including supervisors, can be held individually liable under CEPA. Because here the individual Defendant supervisors may be sued under CEPA and those Defendants are non-diverse, this Court does not have diversity jurisdiction over this action.

### D. *Fees and Costs*

Plaintiff seeks fees and costs from Continental for the improvident removal of this matter. 28 U.S.C. § 1447(c) provides, in pertinent part:

> An order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal . . .

The court "may require the payment of fees and costs by a party which removed a case which the court then remanded, even though the party removing the case did not act in bad faith." *Mints v. Educational Testing Serv.,* 99 F.3d 1253, 1260 (3d Cir.1996). Even if the case is remanded, the district court does not lose jurisdiction to award fees and costs. *Id.* at 1257. Fees may, however, be denied if the removing party presents a "colorable claim" of jurisdiction. *Virgin Islands Housing Auth. v. Coastal Gen'l Construction,* 27 F.3d 911, 917 (3d Cir.1994).

At the time Continental filed its removal notice, it had a colorable claim of jurisdiction regarding two of its positions: the CEPA-preemption issue and individual liability under CEPA. *See Virgin Islands Housing Auth.,* 27 F.3d at 917. The Court therefore declines to award fees with respect to those two issues.

In light of the Supreme Court's decision in *Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203, however, Continental's assertion that Plaintiff's CEPA claims are preempted by the RLA does not present a colorable claim of jurisdiction. Therefore, the Court grants Plaintiff reasonable attor-

neys' fees [3] incurred in arguing that CEPA is not preempted by the RLA.

## III. CONCLUSION

For the reasons set forth above, the Court **grants** Plaintiff's motion to remand. It also **grants** Plaintiff reasonable attorneys' fees incurred only in arguing that CEPA is not preempted by the RLA. Plaintiff shall submit to the Court and serve on Continental that fee application and any supporting affidavits by no later than **January 31, 2000.** Any objection to the reasonableness of the fees *only* shall be submitted to the Court and served on Plaintiff by no later than **February 14, 2000.** This entire matter, except the fee issue, shall be remanded to the Superior Court in Passaic County.

---

**3.** The Court will not award Plaintiff costs associated with this motion because he would have incurred those costs anyway in arguing that CEPA is not preempted by the FAAAA and that there is no diversity jurisdiction.