Brenda WELLONS, Plaintiff–Appellant,

v.

NORTHWEST AIRLINES, INC., Defendant–Appellee.

No. 97–1242.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted March 10, 1998.

Decided Jan. 26, 1999.

Rita F. Young (briefed), Detroit, MI, for Appellant.

Donna J. Donati (argued and briefed), George D. Mesritz (briefed), Miller, Canfield, Paddock & Stone, Detroit, MI, for Appellee.

Before: KRUPANSKY, NELSON, and BATCHELDER, Circuit Judges.

NELSON, J., delivered the opinion of the court, in which BATCHELDER, J., joined. KRUPANSKY, J. (pp. 496–504), delivered a separate dissenting opinion.

DAVID A. NELSON, Circuit Judge.

The question presented in this appeal is whether a state statutory race discrimination claim and related common law tort claims asserted against an air carrier by a former employee have been preempted by the Airline Deregulation Act, 49 U.S.C. § 41713. Because the plaintiff's claims bear only the most tenuous relation to airline rates, routes, or services—the touchstone under 49 U.S.C. § 41713(b)(1)—we conclude that the claims have not been preempted. The district court having dismissed the case on preemption grounds, the order of dismissal will be reversed.

## I

The plaintiff, Brenda Wellons, worked for Northwest Airlines as a reservation clerk from 1988 to 1993. Injured in an automobile accident in August of 1993, she was unable to work for a period of time thereafter. Ms. Wellons asked for a leave of absence, but Northwest denied her request. She was told that she would have to quit her job and reapply for employment when able to work again.

As instructed, Ms. Wellons resigned from her position. On reapplying for the job four months later, however, she was told that she could not be rehired because of a company policy that was said to bar the reemployment of anyone who had quit a job at Northwest within a year of the reapplication. But around the time that Ms. Wellons (an African–American) was denied reemployment, she says, Northwest allowed a similarly situated white woman to return to work after an absence of less than a year.

In September of 1996 Ms. Wellons brought suit against Northwest in a Michigan state court. The complaint alleged racial discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act, together with intentional infliction of emotional distress, fraud, and misrepresentation.

Northwest removed the action to federal court on diversity grounds. The company then moved for dismissal of the complaint on the ground that Ms. Wellons' claims were preempted by the Airline Deregulation Act, 49 U.S.C. § 41713. The district court granted the motion to dismiss,[1] and this appeal followed.

## II

We start our preemption analysis by noting the existence of a "presumption that Congress does not intend to supplant state law." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); see *Abdu–Brisson v. Delta Air Lines, Inc.*, 128 F.3d 77, 83 (2d Cir.1997). Without a "clear and manifest purpose" expressed by Congress, preemption is inappropriate. *Travelers*, 514 U.S. at 655, 115 S.Ct. 1671; *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1465 (11th Cir.1998).

The expression of purpose at issue here— the preemption clause of the Airline Deregulation Act—reads as follows:

"Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may

---

1. The district court gave Ms. Wellons leave to amend her complaint to assert federal civil rights claims, but Ms. Wellons concedes that any federal claims she might have had are barred by the statute of limitations.

not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service* of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). (Emphasis supplied.)

The words "related to," as used in this context, "express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Adopting the construction placed on a comparable locution in the Employee Retirement Income Security Act ("ERISA"), the Supreme Court held in *Morales* that the Airline Deregulation Act preempts any state enforcement action—including an attempt to regulate air fare advertising under state deceptive advertising law—"having a connection with or reference to airline 'rates, routes, or services.'" *Id.* at 384, 112 S.Ct. 2031. See also *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 223–24, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (holding Consumer Fraud Act claims preempted when based on airline's administration of its frequent flyer program, but holding breach of contract claims not preempted).

■ Northwest contends, with undeniable logic, that its selection of reservation clerks has "a connection with" services—*i.e.*, airline reservations—provided by the airline through its personnel. And Northwest argues that Ms. Wellons' rights should be limited to those available to her under the federal civil rights laws because the application of non-uniform state laws could hinder the reliance on market forces that Congress sought to achieve in the Airline Deregulation Act.

Among the cases on which Northwest relies in this connection is *Belgard v. United Airlines*, 857 P.2d 467, 471 (Colo.App.1992), *cert. denied*, 510 U.S. 1117, 114 S.Ct. 1066, 127 L.Ed.2d 386 (1994). *Belgard* was a suit by airline employees who had been denied pilots' jobs as a result of having undergone corrective eye surgery. They claimed that the defendant airline was in violation of a Colorado statute that prohibited discrimination based on a perceived physical handicap.

Relying on the Deregulation Act's twin purposes of "maintenance of safety as the highest priority" and "maximum reliance on competitive market forces," the *Belgard* court determined that state regulation of hiring decisions made on the basis of job applicants' "physical characteristics" was preempted as having "a connection with" the airline's services. *Id.* at 470–71.

In *Fitzpatrick v. Simmons Airlines, Inc.*, 218 Mich.App. 689, 555 N.W.2d 479 (1996), similarly, a baggage handler whose employment had been terminated for failure to meet an airline's mandatory height and weight rule sued for discrimination under the Elliott–Larsen Act. Quoting *Belgard*, the Michigan appellate court concluded that a law " 'that restricts an airline's selection of employees, based upon their physical characteristics, must necessarily have a connection with and reference to, and therefore must be one "relating to" [airline services].' " *Fitzpatrick*, 218 Mich.App. at 692, 555 N.W.2d at 481. An order dismissing the plaintiff's case on preemption grounds was therefore affirmed.

*Belgard* and *Fitzpatrick* may have been decided correctly, but it does not seem to us that they are of much help to Northwest here. The United States Supreme Court has made it clear that notwithstanding the breadth of 49 U.S.C. § 41713, the "related to" language does not vitiate the normal presumption against preemption. *De Buono v. NYSA–ILA Medical and Clinical Servs. Fund*, 520 U.S. 806, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997). And the Supreme Court has cautioned that " '[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Morales*, 504 U.S. at 390, 112 S.Ct. 2031 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)) (alterations in original). State law claims of *racial* discrimination—as opposed to claims of discrimination on the basis of physical characteristics that might have some bearing on the individual's ability to render service safely and efficiently—are not preempted, in our view; they bear "too tenuous, remote, or peripheral" a relation to airline rates or services.[2]

---

**2.** It is true, as Northwest points out, that state laws forbidding discrimination on the basis of

Neither air safety nor market efficiency is appreciably hindered by the operation of state laws against racial discrimination. See *Abdu–Brisson*, 128 F.3d at 82–84. An employee's race, as opposed to his eyesight or physical size, has no arguable connection to safety.[3] "Unlike the regulation of marketing practices at issue in *Morales* or the regulation of frequent flyer programs at issue in [*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) ], whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency." *Abdu–Brisson*, 128 F.3d at 84.

The Second, Ninth, and Eleventh Circuits have all held that the Deregulation Act does not preempt state laws against discrimination on the basis of one or another of the following characteristics: age, sex or perceived disability. *Parise*, 141 F.3d 1463 (11th Cir. 1998); *Tseu*, 128 F.3d 1301 (9th Cir.1997); *Abdu–Brisson*, 128 F.3d 77 (2d Cir.1997). It seems to us that an employee's race has less to do with the services he renders for the airline than his age or physical condition might. Unwilling to create a circuit split as far as race is concerned, we hold that Ms. Wellons' state law race discrimination claims are not preempted.

The order of dismissal is **REVERSED**, and the case is **REMANDED** for further proceedings not inconsistent with this opinion.

KRUPANSKY, Circuit Judge, dissenting.

Addressing a question of first impression in this circuit, the panel majority has resolved that the federal pre-emption proviso of the Airline Deregulation Act of 1978 ("ADA") (as recodified in 1994 and amended), 49 U.S.C. § 41713(b),[1] did not preclude the prosecution of a state law racial discrimination in employment claim, and two related state common law tort causes of action, by a former airline worker against her erstwhile employer. However, because Congress intended the subject pre-emption provision to broadly forestall the application of any state law in any mode which is "related to a price, route, or service of an air carrier" (49 U.S.C. § 41713(b)(1)), the instant state law employment discrimination cause and related tort claims should be deemed pre-empted, and the plaintiff's claims and remedies should be restricted to those authorized by federal law, because *all* employment-related activities undertaken by a regulated airline are "related to" its provision of "services" to its patrons. Accordingly, I would affirm the district court's dismissal of each of the plaintiff's three state law counts for failure to state a justiciable claim. FED.R.CIV.P. 12(b)(6).

The plaintiff-appellant Brenda Wellons ("Wellons"), an African American woman, has alleged that she worked as a reservation sales agent for defendant-appellee Northwest

---

pregnancy have been held to "relate to" employee benefit plans governed by ERISA. *Shaw*, 463 U.S. at 96, 103 S.Ct. 2890. It does not follow, however, that state laws forbidding discrimination on the basis of race must be held to "relate," in the statutory sense, to an air carrier's prices, routes, or services. See *Gilman v. Northwest Airlines, Inc.*, 230 Mich.App. 293, 583 N.W.2d 536 (1998), a well reasoned opinion holding that although an individual's weight or height might—as *Fitzpatrick* held—be "related to" safety and the quality of an air carrier's services, any relationship that an individual's sex or age might bear to safety and services is too "tangential" to result in preemption.

**3.** The Ninth Circuit rejects the *Belgard/Fitzpatrick* conclusion that state laws relating to an employee's perceived physical disability are preempted. In *Aloha Islandair Inc. v. Tseu*, 128 F.3d 1301 (9th Cir.1997), where the airline conceded that state race discrimination law was not preempted, the court held that state disability

discrimination law was not preempted either. *Id.* at 1302–03. We express no view on the correctness of that holding.

**1.** Among other things, the ADA posits that, with exceptions not herein applicable:

> [A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or *service* of an air carrier that may provide transportation under this subpart.

49 U.S.C. § 41713(b)(1). (Emphases added). The litigants have agreed that defendant-appellee Northwest Airlines is an "air carrier" within the meaning of this enactment.

Prior to 1994, predecessor versions of the ADA preemption clause were codified at 49 U.S.C.App. § 1305(a)(1). *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222–23 & n. 1, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).

Airlines ("Northwest") from August 15, 1988 until her resignation on September 10, 1993.[2] Wellons voluntarily terminated her employment because of disabling personal injuries, incurred in an August 8, 1993 automobile accident, which necessitated protracted physical therapy. The plaintiff has averred that, shortly after that accident, Northwest corporate management denied her application for a medical leave of absence, thus compelling her voluntary severance, but advised her that she could apply for reinstatement to her former position following her physical rehabilitation. Wellons has alleged that, in reliance upon management's representations, she reapplied for her former position approximately four months following her volitional release, but was informed at that time that it was against company policy to rehire a past employee who had been separated from Northwest for less than one year. The plaintiff has further alleged that a caucasian female who had been absent from her former employment for less than one year had been subsequently retained by Northwest within the approximate temporal parameters of Wellons' resignation and reapplication. Wellons has additionally asserted that she was qualified for the subject employment, and that her race contributed to the defendant's decision not to rehire her.

On September 9, 1996, via her three count complaint lodged in Michigan state court anchored in the allegations summarized above, Wellons charged Northwest with racial discrimination in employment in violation of Michigan's Elliott–Larsen Civil Rights Act (MICH. COMP. LAWS § 37.2202), state law intentional infliction of emotional distress, and state law fraud and misrepresentation. Asserting diversity of citizenship, Northwest removed the cause to federal district court.[3] On December 23, 1996, the district court granted the defendant's motion to dismiss each count of Wellons' complaint, concluding that the ADA pre-emption clause barred each state law claim because the plaintiff's employment was "related to" the defendant's "service" function. Following the lower court's January 28, 1997 rejection of the plaintiff's motion for reconsideration, Wellons on February 21, 1997 noticed a timely appeal to this court. This forum reviews *de novo* a trial court's dismissal of a claim pursuant to FED.R.CIV.P. 12(b)(6). *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1249 (6th Cir.1996).

The laws of the United States are "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. The United States Supreme Court and the lower federal courts have construed this constitutional mandate to invalidate the application of any state law which may in any manner intrude upon the execution of a federal statutory scheme. *See, e.g., Louisiana Public Service Comm'n v. F.C.C.*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986); *CSX Transportation, Inc. v. City of Plymouth, Michigan*, 86 F.3d 626, 627–28 (6th Cir.1996). The Supreme Court has dictated that the Supremacy Clause "may entail pre-emption of state law either by express [statutory] provision, by implication, or by a conflict between federal and state law." *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The "ultimate touchstone" of federal pre-emption is whether Congress intended, via legislation, to exclusively federalize the regulation of a particular subject matter. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). When a congressional intent to supplant the application of state law to a federalized subject matter is apparent, pre-emption "is *compelled* whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 77

---

**2.** "In reviewing the dismissal, all allegations of the complaint must be taken as true and construed in a light most favorable to the nonmovant." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 544 (6th Cir.1991).

**3.** Northwest is a Minnesota corporation with its principle place of business located within that state. Wellons resides in Michigan. The plaintiff's complaint sought monetary satisfaction totalling $750,000. *See* 28 U.S.C. § 1332.

L.Ed.2d 490 (1983). (Emphasis added; citation and quotations omitted).

Congress has incorporated the following phraseology into the ADA:

> [A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or *service* of an air carrier that may provide transportation under this subpart.

49 U.S.C. § 41713(b)(1). (Emphases added).

Via adoption of the "related to" clause, Congress "express[ed] a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In *Morales,* the high Court ruled that the ADA invalidated the application, against commercial airlines, of state laws governing deceptive fare advertising practices, because Congress did not merely preclude direct state *regulation* of airline prices, routes, and services, but instead sweepingly pre-empted the application of *any* state law in *any* context *"related to "* those airline functions. *Id.* at 383–86, 112 S.Ct. 2031. Adhering to its precedential construction of Congress's similar pre-emption mandate promulgated by the Employee Retirement and Income Security Act ("ERISA"),[4] the *Morales* Court instructed that "a state law may 'relate to' [a federally regulated subject matter], and thereby be pre-empted, *even if the law is not specifically designed to affect such [matters], or the effect is only indirect." Id.* at 386, 112 S.Ct. 2031 (emphasis added) (*quoting Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). Thus, the Court concluded that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the ADA]." *Id.* at 384, 112 S.Ct. 2031. Invoking the "commonplace of statutory construction that the specific governs the general," *id.* at 384, 112 S.Ct. 2031, the Justices dismissed the argument that the "remedies saving clause" of the ADA[5] superseded the expressed congressional intention to suppress the application of state law to commercial airlines in any manner related to its rates, routes, or services: "[W]e do not believe Congress intended to undermine this carefully drawn [pre-emption] statute through a general saving clause." *Id.* at 385, 112 S.Ct. 2031 (*quoting International Paper Co. v. Ouellette,* 479 U.S. 481, 494, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987)).

The *Morales* Court also rejected the challenge that state laws which relate to airline prices, routes, and services should be pre-empted only if those state laws *conflict* with federal law:

> Nothing in the language of [the ADA pre-emption section] suggests that its "relating to" pre-emption is limited to *inconsistent* state regulation; and once again our ERISA cases have settled the matter: "The pre-emption provision ... displaces all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements."

*Id.* at 386–87, 112 S.Ct. 2031 (emphasis in original; brackets omitted) (*quoting Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)). The Court noted that, although "some state actions may affect airline fares in too tenuous, remote, or peripheral a manner to have pre-emptive effect," *id.* at 390, 112 S.Ct. 2031 (quotations and brackets omitted) (*citing Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)), the regulation of deceptive fare advertising was sufficiently related to airline "prices" to fall within ADA pre-emption. Fi-

---

4. *See* 29 U.S.C. § 1144(a) (pre-empting the application of "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan.") (Emphasis added).

5. At the time of the *Morales* decision, the ADA saving clause expressly preserved "the remedies now existing at common law or by statute."

*Morales,* 504 U.S. at 384, 112 S.Ct. 2031 (*quoting* 49 U.S.C.App. § 1506 (repealed)). The ADA currently contains a saving provision which posits that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c).

nally, the Court observed that federal pre-emption of state proscriptions against false rate advertising will not immunize commercial airlines against accountability for such transgressions: "[O]ur decision does not give the airlines *carte blanche* to lie to and deceive customers; the DOT [Department of Transportation] retains the power to prohibit advertisements which in its opinion do not further competitive pricing[.]" *Id.* at 390–91, 112 S.Ct. 2031 (citation omitted).

Subsequently, in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Court reaffirmed *Morales* by announcing that the ADA superseded an action against a commercial air carrier anchored in the Illinois Consumer Fraud Act because that state enactment regulated advertising and marketing practices, which, when applied against an air carrier, are related to its fares and services. *Id.* at 226–28, 115 S.Ct. 817. The Court further directed that, although ADA pre-emption insulated commercial airlines from all state-*imposed* (*i.e.* statutory or administrative) legal obligations related to prices, routes, or services, a ·state law *contract* action which related to one of those functions could nevertheless proceed against a flight service enterprise, because the defendant carrier had voluntarily accepted those contractual obligations:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. As persuasively argued by the United States, terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law within the meaning of [the ADA pre-emption statute]. A rem-

edy confined to a contract's terms simply holds parties to their agreements.

*Id.* at 228–29, 115 S.Ct. 817 (citation, brackets, quotations, and footnote omitted). *See also id.* at 232–33, 115 S.Ct. 817. Thus, *Wolens* clarified that the ADA pre-emption language insulated commercial airlines from all state law enforcement actions which were related to their prices, routes, or services, with the sole exception consisting of voluntarily assumed contractual duties which could be enforced pursuant to state law.

Applying the Court's directives in *Morales* and *Wolens* to the legal question joined by the instant appeal compels the conclusion that a state statutory claim for employment discrimination, and related state common law tort causes of action, should be deemed pre-empted by the ADA.[6] The hiring or refusal to employ, terms and conditions of employment, and discharge of employees by an air carrier are matters clearly "related to" that carrier's ability to provide "services" to its customers. Beyond controversy, an air carrier's capability to ensure required "services" to its customers necessitates the ability to employ, retain, and/or discharge employees, which in turn compels the carrier to develop and implement employment policies and practices related to the effective administration of those employer-employee relations which are *essential* to the airline's "services" to its customers. By contrast, advertising (which the Court directed in *Morales* and *Wolens* to be sufficiently related to the "price" and "service" aspects of an air carrier's business to pre-empt state law enforcement actions concerning a carrier's allegedly fraudulent advertisements) is patently *not* essential to the air carrier's "price" or "service" processes. Because an airline can conduct its business, including the fixing of prices and supplying services, without advertising, but it *cannot* carry on business, especially providing services, without employing workers, the

---

6. *See Musson Theatrical, Inc., v. Federal Express Corp.,* 89 F.3d 1244, 1251 (6th Cir.1996) (positing that common law fraud and misrepresentation causes of action which averred false price advertising by an airborne carriage service were suppressed by the ADA); *Travel All Over the World, Inc. v. Saudi Arabia,* 73 F.3d 1423, 1434 (7th Cir.1996) (explaining that state common law

intentional infliction of emotional distress and fraud claims initiated by a travel agency against Saudi Arabian Airlines were supplanted by the ADA because they related to a "service" function of the defendant, namely its refusal to transport passengers whom had been booked by the plaintiff).

relationship between the airline and its employees (past, present, or future) is at least as closely "related to" the airline's "services" as the airline's advertising practices are related to its "prices" and "services."[7] The employment relationship resides in the heartland of every vital and indispensable airlines operation, and thus Congress indisputably intended section 41713(b)(1) to shield air carriers from state law litigation concerning that relationship.

The panel majority's exposure of commercial airlines to the variant employment discrimination standards prevailing under the laws of the several states erroneously subjects those air carriers to potentially inconsistent, and in any event extra-national, regulatory standards and requirements, in contradiction of congressional policy and intent. *See Morales,* 504 U.S. at 378–79, 112 S.Ct. 2031 (remarking that, by promulgating the ADA, Congress intended to promote economic efficiency, innovation, and low consumer prices by primarily relying upon competitive market forces rather than governmental regulation of the commercial airborne carriage business, but that surviving governmental regulation of the industry would be federal; the ADA pre-emption clause was designed to prevent the states from eviscerating federal deregulation by substituting state regulation); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 55–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting ERISA legislative history which revealed a congressional intention, via enactment of ERISA's pre-emption term which was analogous to the ADA pre-emption clause, to insulate ERISA-regulated benefit plans from state law regulations, standards, and requirements, so as to ensure national uniformity of regulation, administrative efficiency, and predictability and consistency of decisions). Manifestly, the imposition of multiple, and potentially conflicting or inconsistent, state created employment regulatory schemes upon an interstate commercial airline may impede its ability to provide efficient and low cost carriage services. Those congressionally-sanctioned values may be best promoted by substituting *all* state law regulation as related to airline prices, routes, or services (including employment actions, decisions, policies, and practices) with exclusive federal regulation and remedies.

Moreover, as noted in *Morales,* 504 U.S. at 386–87, 112 S.Ct. 2031, even state regulations which are substantially *consistent* with federal regulations are pre-empted if they relate to an air carrier's prices, routes, or services. Thus, because an airline's employment decisions, policies, and practices are so inseparably interrelated with its ability to provide low cost air carriage to the public, any attempted state legislative or other effort that directly or indirectly is in derogation of those abilities should be averted, notwithstanding that the implicated state law regime may harmonize with governing federal law requirements and standards. Accordingly, in the instant case, the plaintiff may advance *only* her *federally-*created legal rights against employment discrimination, which, by operation of the ADA, displace her otherwise applicable rights guaranteed by state law.[8] *Cf. McCall v. Chesapeake & Ohio Ry. Co.,* 844 F.2d 294, 300–04 (6th Cir.) (ruling that a Michigan law handicapped discrimination in employment claim inaugurated by a diabetic locomotive engineer was pre-empted by the grievance resolution provisions of the federal Railway La-

---

**7.** Because an airline cannot set or charge "prices" or charter "routes" without retaining employees, the employment relationship is arguably also sufficiently related to those dimensions of an air carrier's undertakings to trigger ADA pre-emption. However, this issue need not be addressed because the close connection of the employment relationship to the airline's "service" function is independently sufficient to compel pre-emption, as evolved herein.

**8.** It should be emphasized that federal pre-emption, via 49 U.S.C. § 41713(b)(1), of enforcement of state created rights against employment discrimination would not invest any affected commercial airborne carrier with a license to discriminate in employment against any person by reason of race, because Congress and federal administrative agencies have outlawed such practices. *See Morales,* 504 U.S. at 390–91, 112 S.Ct. 2031. However, the panel majority has correctly noted that the instant plaintiff has conceded that she has failed to judicially assert her federal race discrimination in employment claim within the statutory limitations period. *See* Appellants' Brief, filed August 4, 1997, page 2 (*citing* 42 U.S.C. § 2000e–5(e)).

bor Act), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

The panel majority has invoked three obviously distinguishable noncontrolling out-of-circuit decisions from the Eleventh, Ninth, and Second Circuits, and one nonauthoritative disposition by a Michigan state appellate court, in support of its conclusion that a state statutory or common law action arising from alleged employment discrimination is not pre-empted by the ADA. However, those nonprecedential dispositions are irrelevant and/or misconceived, and of no instructive or persuasive precedential value in the instant action.

The panel majority has cited *Parise v. Delta Airlines, Inc.,* 141 F.3d 1463 (11th Cir.1998), a Florida law age discrimination lawsuit launched by a former customer service agent against a commercial air carrier, in which the defendant had alleged that its dismissal of the plaintiff had been prompted not by the plaintiff's age but rather by specified behavior which had allegedly threatened passenger safety. The trial court had ruled that, because the defendant's implicated employment decision was related to its provision of safe "services" to its passengers, the plaintiff's state law age discrimination action was pre-empted by the ADA. *Id.* at 1465. On appeal, the Eleventh Circuit reversed the lower court's dismissal of the plaintiff's complaint and remanded for further proceedings, ruling that the defendant's mere contention that it had cashiered the plaintiff for reasons related to customer safety rather than because of age discriminatory animus was insufficient to warrant pre-emption; rather, the defendant had merely proffered a legitimate nondiscriminatory reason for its challenged employment action, which triggered the plaintiff's burden to prove at trial that the defendant's rationale constituted mere pretext. *Id.* at 1466-68.

Accordingly, in *Parise,* defendant Delta Airlines' *fact-specific defense theory* (that the plaintiff's alleged troublesome conduct justified the defendant's termination of the plaintiff's employment because it had threatened the employer's ability to provide safe "services" to its customers) would fail if the plaintiff could prove that he did not commit the alleged threatening conduct, or that the defendant's proffered reason for its contested employment action pretextually masked age-related discriminatory animus. However, because the defendant had failed to urge generally that *all* state law age discrimination cases (and other types of employment discrimination cases) against commercial air carriers should be broadly pre-empted by the ADA because, as a matter of law, *all* of an airline's employment actions, decisions, policies, and practices are related to its provision of "services" to its customers, the Eleventh Circuit had no occasion to address the question presently before this reviewing court. Accordingly, *Parise* affords no material analytical guidance to the instant panel.

Next, the panel majority has relied upon *Abdu–Brisson v. Delta Air Lines, Inc.,* 128 F.3d 77 (2d Cir.1997), where the Second Circuit reversed the district court's dismissal, for ADA pre-emption, of an age discrimination lawsuit buttressed by the laws of New York state and New York City, concluding that the state and local age discrimination in employment statutes and ordinances in controversy affected the defendant's prices, routes, or services in ways which were too tenuous, remote, or peripheral to warrant federal pre-emption. *Id.* at 81-86. The *Abdu–Brisson* court discarded the defendant's contention that *the specific age discrimination litigation at issue,* which concerned work assignments driven by seniority considerations, would adversely affect its performance of "services" in that "altering seniority would disrupt flight deck harmony and thus affect services," because the defendant had also contradictorily alleged "that pilot seniority does not affect the company itself." *Id.* at 85. The court remarked that "Delta cannot have it both ways, claiming in [its summary judgment] motion that it has no motive to discriminate because seniority is of no concern to the company, and then claiming [in its motion for dismissal based on ADA pre-emption] that seniority does affect the company because it impacts flight deck relationships, thereby affecting services." *Id.*

Accordingly, the Second Circuit concluded that the defendant's allegations "failed to establish that plaintiffs' claims affect its ser-

vices." *Id.* However, as in *Parise, supra,* the defendant in *Abdu–Brisson* neglected to argue that, as a matter of law, *all* state and local law employment discrimination actions against an air carrier interfere with its service function because they impose diverse regulatory requirements extraneous to federal mandates and requisites, in contravention of the will of Congress. Consequently, *Abdu–Brisson* offers no guidance for the question posed *sub judice.*

The panel majority has also referenced *Aloha Islandair Inc. v. Tseu,* 128 F.3d 1301 (9th Cir.1997), wherein an airline commenced a declaratory and injunctive relief action against the Hawaii Civil Rights Commission to forestall state enforcement of state disability discrimination laws by reason of the carrier's rejection of a monocular pilot's employment application. In *Tseu,* the airline *conceded arguendo* that state law race, color, religion, or sex discrimination litigation against it would not be pre-empted by the ADA.[9] *Id.* at 1302. However, the airline persuaded the district court that, by contrast, state laws which banned *physical disability* discrimination in employment (such as the Hawaii law in controversy therein) should nevertheless be pre-empted by the ADA, because an airline employee's physical capacities are related to the airline's service obligations to its passengers. *Id.*

On review, the Ninth Circuit vacated the trial court's summary judgment for the airline and remanded for further proceedings. *Id.* at 1304. After noting that the Federal Aviation Administration had medically approved the monocular pilot in question, the Ninth Circuit perfunctorily commented that "we see no congressional purpose that would be served by denying to FAA-certified pilots, in the name of preemption, the protection of Hawaii's law from [sic] employment discrimination based on physical disability." *Id.* at 1303. However, to the contrary, as developed herein, a clear congressional purpose would be advanced by displacing, in favor of federal law, the application of Hawaiian disability discrimination law (as well as all other state law employment discrimination measures) against air carriers—namely the application of exclusive and uniform federal standards, requirements, and remedies to interstate air carriers concerning their employment actions, decisions, policies, and practices.[10]

9. Apparently, the plaintiff air carrier misconstrued *Colorado Anti–Discrimination Comm'n v. Continental Air Lines,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) to permit state law discrimination actions anchored in race, color, religion, or gender to proceed against air carriers despite the pre-emption provision of the ADA. *See Aloha Islandair Inc. v. Tseu,* 128 F.3d 1301, 1302 (9th Cir.1997). The plaintiff-appellant Wellons in the case *sub judice* has likewise vigorously advanced *Colorado Anti–Discrimination Comm'n.* However, that 1963 decision *predated* passage of the Airlines Deregulation Act of 1978 and its component pre-emption clause, and thus retains no authority on the subject of pre-emption. The *Colorado Anti–Discrimination Comm'n* Court had merely pronounced that, *in the absence of an expressed pre-emption statute,* the federal regulation of racial discrimination in employment by commercial airlines, promulgated by sections of the Federal Aviation Act of 1958, administrative regulations, and executive orders, were collectively insufficient to imply a congressional intent to *exclusively* federalize the regulation of racial employment discrimination in the air carriage industry, and thus a state law race discrimination in employment claim could be advanced against an airline. *Colorado Anti–Discrimination Comm'n,* 372 U.S. at 723–25, 83 S.Ct. 1022.

10. Although the panel majority expressly declined to comment regarding the analytical soundness of the *Tseu* decision, it has conceded that *Tseu* conflicts with other judicial resolutions of the question whether state disability discrimination in employment laws are superseded by the ADA. *See* majority opinion, pages 495–96 & n. 3, citing *Belgard v. United Airlines,* 857 P.2d 467, 470–71 (Colo.App.1992) (directing that pilots could not prosecute Colorado statutory disability discrimination causes against commercial airlines which had denied them employment because they had incurred corrective eye surgery, in part because employment decisions based upon that physical characteristic were related to the airline's provision of safe customer services), *cert. denied,* 510 U.S. 1117, 114 S.Ct. 1066, 127 L.Ed.2d 386 (1994); and *Fitzpatrick v. Simmons Airlines, Inc.,* 218 Mich.App. 689, 555 N.W.2d 479, 481 (Mich.App.1996) (ruling that a physical disability discrimination in employment complaint against an air carrier initiated under Michigan's Elliott–Larsen Act by a terminated baggage handler who had failed the airline's height and weight strictures was pre-empted by the ADA because an airline's selection of workers with reference to performance-related physical criteria necessarily related to the provision of "services" by that enterprise), *appeal denied,* 570 N.W.2d 785 (Mich.1997) (Table).

Finally, the instant panel majority has favorably referenced *Gilman v. Northwest Airlines Inc.*, 230 Mich.App. 293, 583 N.W.2d 536 (Mich.App.1998), wherein a Michigan state appellate forum pronounced that state law age and gender discrimination in employment claims against an airline were not pre-empted by the ADA because "[w]e are unable to discern how an individual's age or sex has any reasonable connection or relation to airline services or how a state law abridging unlawful discrimination on those bases will restrict an airline's authority to select employees. To the contrary, a state law prohibiting an airline from hiring or terminating employees on the basis of race, gender, or ethnicity is wholly unrelated to the services it provides." *Id.* at 540. The *Gilman* court distinguished *Fitzpatrick v. Simmons Airlines, Inc.*, 218 Mich.App. 689, 555 N.W.2d 479 (Mich.App.1996) (ruling that a physical disability discrimination in employment complaint against an air carrier initiated under Michigan's Elliott–Larsen Act by a terminated baggage handler who had failed the airline's height and weight strictures was pre-empted by the ADA because an airline's selection of workers with reference to performance-related physical criteria necessarily related to the provision of "services" by that enterprise), *appeal denied*, 570 N.W.2d 785 (Mich.1997) (Table), by underscoring that discrimination incited by an employee's height or weight may be related to the qualifications of the subject employee to provide appropriate "services" to the employer air carrier's patrons; it therefore agreed with the *Fitzpatrick* court that state law height and weight discrimination in employment cases should be pre-empted, but concluded that state law age or sex discrimination in employment cases should not be pre-empted because those attributes are not related to employment qualifications. *Gilman*, 583 N.W.2d at 539–40.

Although this differentiation was facially rational in the abstract, it was nonetheless immaterial to the proper analysis of the issue adjudicated by the *Gilman* court, which issue is currently before the instant panel, namely whether *any* state law which governs an employer's employment-related actions, decisions, policies, or practices may be applied against a commercial airline despite the broad pre-emption provision of the ADA. As evolved *supra*, the Supreme Court in *Wolens* and *Morales* recognized a broad congressional intent to preclude *all* state regulation of matters which are related to airline prices, routes, and services to a degree that is more than merely "tenuous, remote, or peripheral." *See Wolens*, 513 U.S. at 222–24, 115 S.Ct. 817; *Morales*, 504 U.S. at 390, 112 S.Ct. 2031. The question whether the employment actions, decisions, policies, and practices of airlines are so related to the airline's provision of "services" to its passengers does not turn upon the potential substantive merits of any state law discrimination claim.

Although employment discrimination motivated by *performance-related* physical characteristics, such as height or weight, may be rational and hence justifiable, whereas employment discrimination animated by *non-performance-related* physical characteristics, such as race, age, or gender, is irrational and unjustifiable, that distinction is absolutely inapposite to the question whether Congress intended to federalize the employment relationship between air carriers and their past, present, or potential future employees.[11] Because the employment of workers is sufficiently "related to" an airline's provision of "services" to its passengers, that employment relationship should be entirely governed by federal law. By operation of Congress' ADA pre-emption edict, *no state law employment discrimination cause may lie against an airline*, irrespective of whether that discrimination was allegedly triggered by performance-related physical qualities, or by non-performance-related physical or other characteristics.

The "presumption that Congress [by enacting legislation] does not intend to supplant state law," *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671,

---

11. *See Wolens* and *Morales, supra,* whereby the Supreme Court pre-empted enforcement actions under state law related to alleged fraudulent advertising and marketing practices by airlines, without regard to the potential substantive merits of those actions.

504

131 L.Ed.2d 695 (1995), is overcome when the language and purpose of federal legislation discloses a congressional intent to do so. *See De Buono v. NYSA–ILA Medical and Clinical Services Fund*, 520 U.S. 806, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997); *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997). Via 49 U.S.C. § 41713(b)(1), Congress has unequivocally evidenced an intent to forestall *all* state regulation of commercial airlines in any and all particulars *related to* their prices, routes, and services, in favor of *exclusive* federal regulation (accompanied by a large measure of overall deregulation). Because the employment relationship is, as a matter of law, inextricably connected to a business's provision of services to its customers, *all* noncontractual employment discrimination claims pressed by past, present, or potential future employees against commercial airlines must be solely anchored in federal law. Thus, *no* state law employment discrimination claim, or related cause of action, may be prosecuted against a commercial airline; all such cases must instead be supported exclusively by federal law.

Accordingly, I respectfully **DISSENT** from the panel majority's reversal of the trial court's dismissal of the plaintiff's state law complaint.