**FEDERAL EXPRESS CORPORATION, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. Civ.A. 96–3151 DA.**

United States District Court, W.D. Tennessee, Western Division.

June 30, 1999.

Dwayne S. Byrd, R. Larry Brown, Lester A. Bishop, Jr., Federal Express Corporation, Legal Department, Memphis, TN, for Federal Express Corporation, plaintiff.

Joe A. Dycus, U.S. Attorney's Office, Memphis, TN, for United States Postal Service, defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S THIRD COUNTERCLAIM

DONALD, District Judge.

Before the court is Plaintiff's, Federal Express Corporation, Rule 12(b)(6) motion to dismiss Defendant's, United States Parcel Service, third counterclaim for failure to state a claim upon which relief can be granted. Defendant's third counterclaim alleges that Plaintiff violated the Tennessee Consumer Protection Act of 1977 ("TCPA"), Tenn.Code Ann. § 47–18–101 et seq., by engaging in false and misleading comparative advertising. Plaintiff contends that Defendant's counterclaim under the TCPA is preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C.

§ 41713, and therefore should be dismissed.

For the following reasons, the court grants Plaintiff's motion to dismiss.

## I. FACTS

Because the court has set forth its findings of fact and the accompanying citations to the record in its previous orders, the court will not revisit those findings here. Rather, the court adopts its previous findings of fact for purposes of this order.

## II. STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure enables a defendant to file a motion to dismiss for a plaintiff's failure to state a claim upon which relief can be granted. Motions to dismiss under Rule 12(b)(6) are designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). Dismissal of a complaint for failure to state a claim streamlines litigation by "dispensing with needless discovery and factfinding." *Nietzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Dismissal under Rule 12(b)(6) is appropriate where there is no set of facts which would entitle the plaintiff to recover. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.1989). In reviewing a defendant's Rule 12(b)(6) motion to dismiss, a district court should construe the complaint in the light most favorable to the plaintiff, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). If an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). As the Supreme Court said in *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon* at 73, 104 S.Ct. 2229.

A district court may not grant a defendant's Rule 12(b)(6) motion to dismiss based on its disbelief of the plaintiff's factual allegations. *In Re Sofamor Danek Group, Inc.*, 123 F.3d 394 (6th Cir.1997), *cert. denied, Murphy v. Sofamor Danek Group*, —— U.S. ——, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). It is not the court's function to weigh evidence or evaluate the credibility of witnesses. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). Rather, the court should accept all well-pleaded facts as true and not consider matters outside the pleadings. *Hammond* at 175.

Although a court reviewing a Rule 12(b)(6) motion to dismiss should construe the plaintiff's complaint liberally, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid* at 436. Rather, a plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* Accordingly, a district court need not accept as true conclusions of law or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

## III. DISCUSSION

 The motion currently before the court calls for the court to ascertain whether the ADA preempts claims of unfair and deceptive business practices brought under the TCPA. State law can be preempted by federal law either expressly, where the language of the statute explicitly forbids state law claims, or implicitly, where the structure and purpose of the statute suggests a prohibition against state law claims. *See FMC Corp. v. Holliday,*

498 U.S. 52, 56–57, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Ultimately, a court's determination concerning the existence of preemption is a question of Congressional intent. *Id.* at 56, 111 S.Ct. 403. The court must begin its preemption analysis with a "presumption that Congress does not intend to supplant state law." *Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493, 494 (6th Cir.1999) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). In other words, the court will not construe a statute as being preemptive of state law unless Congress has expressed a "clear and manifest purpose" to preempt the state laws in question. *Id.* The court will assume that the ordinary meaning of the ADA's language "accurately expresses the legislative purpose." *Id.* at 57, 111 S.Ct. 403.

Plaintiff's invocation of preemption under the ADA is based upon the following language:

> Preemption.—(1) Except as provided in this subsection, a State, a political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (1996).

The United States Supreme Court has had two occasions to address the parameters of this preemption provision. The court looks to these decisions for guidance as to whether the ADA preempts Defendant's counterclaim under the TCPA.

The Court's first opportunity to discuss the ADA's preemption clause arose in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In *Morales*, several State Attorneys General had threatened to bring enforcement actions under existing state laws against several major airlines if they failed to comply with the standards of airline advertising developed by the National Association of Attorneys General ("NAAG"). Dan Morales, Attorney General for Texas, went so far as to send letters to several airlines as formal notices of his intent to sue them under state laws. The airlines then filed suit against Morales in federal district court seeking a declaratory judgment that § 1305(a)(1) of the ADA preempted state regulation of fare advertisements.[1] Against this factual backdrop, the Court construed the scope of the ADA preemption clause.

The Court placed much emphasis on the phrase "relating to." *Morales* at 383, 112 S.Ct. 2031. Quoting Black's Law Dictionary, the Court defined "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; bring into association with or connection with." *Id.* The Court concluded from this definition that the words "relating to" express a broad preemptive purpose. *Id.* The Court noted that this construction was also supported by the broad interpretation it had given to a similar preemption clause in the Employee Retirement Income Security Act of 1974[2] ("ERISA"). *Id.* at 383–84, 112 S.Ct. 2031. The Court then an-

---

1. In 1994, Congress reenacted Title 49 of the U.S.Code. As a result of this reenactment, the ADA's preemption clause, which was formerly cited as 49 U.S.C.App. § 1305(a)(1), was revised and became 49 U.S.C. § 41713(b)(1). Despite the slight textual variations between § 1305(a)(1) and its reenactment, Congress did not intend to make any substantive changes. *See* Pub.L. 103–272, § 1(a), 108 Stat 745.

2. ERISA's preemption clause states in relevant part:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added).

nounced that it construed "related to," in the context of the case before it, to mean that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted under [the ADA]." *Id.* at 384, 112 S.Ct. 2031. The Court rejected the defendant's arguments that 1) the ADA only preempts states from actually prescribing rates, routes or services, 2) the ADA only preempts state laws specifically addressed to the airline industry, and 3) preemption is inappropriate when the state laws in question are consistent with federal law. *Id.* at 385–86, 112 S.Ct. 2031. The Court then concluded that the guidelines developed by NAAG did relate to airline rates and therefore were preempted under the ADA. *Id.* at 387–88, 112 S.Ct. 2031.

The *Morales* holding still left much uncertainty concerning what state law claims were preempted by the ADA. *Morales* had involved a State's enforcement of its own laws. However *Morales* did not address what effect, if any, the ADA's preemption clause had on state law claims brought by individuals. That question was answered by *American Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In *Wolens,* the plaintiffs had brought a class action suit against American Airlines claiming that the airline had retroactively modified their accumulated benefits under the airline's frequent flyer program. The plaintiffs contended that these modifications constituted a breach of contract and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"). On the other hand, American Airlines contended that these state law claims were preempted by the ADA. After rejecting the Illinois Supreme Court's distinction between matters essential and unessential[3], the Court proceeded to examine the Illinois Consumer Fraud Act.

After examining the provisions of the statute, the Court first noted that the Act was prescriptive in nature and controlled the conduct of those subject to its provisions. *Id.* The Court also found the Illinois Consumer Act to be similar in effect to the NAAG guidelines that were preempted by the ADA in *Morales.* The Court identified intrusive regulation of airline business practices as the primary evil targeted by the ADA's preemption clause and then noted that the potential for this type of regulation was "inherent in state consumer protection legislation." *Id.* at 227–28, 115 S.Ct. 817. The Court construed the Act as "a means to guide and police the marketing practices of the airlines." *Id.* at 228, 115 S.Ct. 817. Since the purpose of the ADA was to "leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services," the Court held that the ADA preempted the plaintiff's claims under the Illinois Consumer Fraud Act. *Id.*

■ The court finds the *Wolens* holding highly relevant to the case at hand. As an express delivery company owning and operating over 500 airplanes, Plaintiff is an air carrier under the ADA and immune from state law claims relating to its prices, routes, or services. Like the Illinois Consumer Fraud Act, the TCPA is prescriptive in nature and governs the conduct of those falling within its governance. Moreover, the TCPA's title and the nature of its provisions indicate that it is state consumer protection legislation, and as such, has "the potential for intrusive regulation of airline business practices." *See Wolens* at 227, 115 S.Ct. 817. Defendant's TCPA counterclaim alleges that Plaintiff knowingly made false representations about Defendant's mail delivery services in advertisements marketing Plaintiff's own

---

**3.** The Illinois Supreme Court had ruled that the ADA did not preempt the plaintiff's class action suit because the subject matter of the suit, the airline's frequent flyer program, was not "essential" to the operation of an airline, but merely peripheral. *Wolens* at 226, 115 S.Ct. 817.

express delivery services. As with any company, the content of Plaintiff's advertising is an integral part of its marketing efforts. In this context, allowing Defendant to pursue its TCPA counterclaim against Plaintiff would make the Act "a means to guide and police the marketing practices of the airlines", a result prohibited by the holding of *Wolens. Id.* at 228, 115 S.Ct. 817.

Defendant contends that the ADA's preemption clause is inapplicable because its TCPA claim does not relate to Plaintiffs prices, routes or services. Instead, Defendant argues that its TCPA claim affects Plaintiff in "too tenuous, remote, or peripheral a manner to have preemptive effect." *Morales* at 390, 112 S.Ct. 2031. To support this contention, Defendant notes that none of the advertisements about which it complains contained any references to Plaintiff's prices, rates, routes or services. Rather, Defendant alleges that Plaintiff made misleading statements about Defendant's products and services.

Defendant's argument might be well-taken if the court adopted a narrow construction of the ADA's preemption clause. However, the Supreme Court's jurisprudence on the scope of the ADA's preemption clause clearly indicates that it should be broadly construed. The Court in *Wolens* noted that the *Morales* opinion had defined the 'relating to' language in the ADA preemption clause as "having a connection with, or reference to, airline 'rates, routes, or services.'" *Wolens* at 223, 115 S.Ct. 817. Thus, the court cannot accept Defendant's contention unless it can be fairly said that its counterclaim has no connection with, or reference to airline rates, routes or services.

Plaintiff's allegedly misleading representations were not made in a vacuum. Rath-

er, they were made in the context of comparative advertising that clearly suggested Plaintiff could offer services that Defendant was unable to provide its customers. Although the majority of the statements made in these advertisements were directed at Defendant's products and services, every single advertisement ended with a statement highlighting the superiority of Plaintiff's services to those of Defendant. *See* (Def.'s Ans., Ex. A–F). Moreover, contrary to Defendant's assertions, these advertisements did make representations as to Plaintiff's own services. Every advertisement ended with a suggestion that Plaintiff was superior because it offered services that Defendant could not offer.[4] In light of the nature of these allegedly false advertisements, the court cannot accept the contention that Defendant's TCPA claim has no connection with, or reference to airline rates, routes or services. The court concludes that Defendant's TCPA claim is preempted by § 41713 of the ADA.

This holding does not leave Defendant without a remedy for the alleged misrepresentations made by Plaintiff. As Plaintiff concedes, nothing in the ADA prohibits Defendant from pursuing these allegations under the Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1051 et seq. Moreover, the United States Department of Transportation has the authority to investigate any unfair and deceptive business practices of an airline and to issue cease and desist orders in the event that any such practices are found. *See* 49 U.S.C. § 41712; *Morales* at 390–91, 112 S.Ct. 2031; *Wolens* at 228, n. 4, 115 S.Ct. 817. The court simply holds that Defendant cannot state a claim for relief under the TCPA where that claim is brought against an air carrier and relates to that carrier's prices, routes or services.

---

4. For example, Plaintiff ran a radio advertisement on April 7, 1997 comparing Defendant's Global Priority Mail with its own global express delivery services. While most of the advertisement focused on Defendant's limited range of delivery, it ended with the statement,

"[f]or true global service, no one makes your packages a priority like FedEx." *See* (Def.'s Ans., Ex. F). This advertisement certainly represents that unlike Defendant, Plaintiff is able to deliver around the world.

## IV. ORDER

Based on the foregoing, Plaintiff's Rule 12(b)(6) motion to dismiss Defendant's TCPA claim is **GRANTED.**